3402. QUEEN INSURANCE CO. *v.* PETERS, administratrix.

1. The judgment of the United States circuit court remanding a case to the State court from which it has been removed is final, and it is the duty of the State court to receive jurisdiction and proceed with the trial.

2. Courts will draw every reasonable deduction to uphold contracts of insurance. A contract of fire insurance issued in the name of a dead man as the insured will not for that reason alone be held invalid. Unless it appears to the contrary, the company will be presumed to have known the fact that the person named as the insured was dead, and that the contract was made for the benefit of the person or persons representing the estate. And especially is this true where the policy itself expressly provides that, "Wherever in this policy the word 'insured' occurs, it shall be held to include the legal representatives of the insured."

3. The administrator on the estate of the insured is the proper personal representative to sue on a policy contract issued in the name of the intestate.

4. Where the amount of the verdict was substantially less than the amount claimed in the proofs of loss and sued for, a verdict for attorney's fees and damages was unauthorized. Besides, the question of law involved in the present case was sufficiently doubtful and important to rebut

19

,the. existence of bad faith on the part of the company in its refusal to pay the policy, and in contesting its validity.

DECIDED JANUARY 15, 1912.

Action on insurance policy; from city court of Moultrie—Judge McKenzie.   March 24, 1911.

*King & Spalding and Underwood,* for plaintiff in error.

*J. A. Wilkes, Shipp & Kline,* contra.

HILL, C. J.   Mrs. Beulah Peters, administratrix of M. Mathis, sued the Queen Insurance Company upon a policy of fire insurance issued in the name of M. Mathis, covering a building and the furniture therein.   The verdict was for plaintiff for $1,300 on the building, $250 as attorney's fees, and 12½ per cent. damages.   At the proper time application was made to remove the case to the circuit court of the United States, upon the ground of diversity of citizenship.   The judge of the State court refused to pass an order of removal, being of the opinion that the attorney's fees sued for under the Civil Code (1910), § 2549, were a part of the costs, and could not be computed in calculating the necessary jurisdictional amount.   There was no exception to this judgment of the State court.   Subsequently the record was filed in the United States court, and, on a hearing before the judge of that court, the case was remanded for trial to the State court, Judge Speer concurring in the view of the former court; and, over objection by the defendant, the case proceeded to trial in the State court.

The evidence is not in conflict, and, briefly stated, is as follows:   The policy of insurance sued upon was issued by the Queen Insurance Company on January 2, 1908, in the name of "M. Mathis" as the insured, no other person being mentioned, nor any words of description added.   The fire which destroyed the property covered by the policy took place on December 8, 1909. The policy was in force at the time of the fire.   On February 1, 1909, the plaintiff, Mrs. Beulah Peters, was duly appointed administratrix upon the estate of M. Mathis, who was dead when the policy was issued, having died in January, 1897.   He left surviving him a widow and six children, the plaintiff being one of them, and the widow was in life when the suit was filed.   M. Mathis left no debts, and left other property besides that covered by the policy.   No other administration was ever had upon his estate.   Except proof of the value of the property insured and destroyed, and

what would constitute reasonable attorney's fees, no oral testimony was introduced. The documentary evidence consisted of exemplified copies of letters of administration, deeds showing title to the property in M. Mathis, the policy of insurance declared upon, proofs of loss, by the administratrix, an agreed statement as to the removal proceedings, and admissions of death of M. Mathis, relationship, etc., recited above. While there are several grounds of error in the motion for a new trial, all of them can be properly condensed into two: (1) as to the jurisdiction of the court; (2) as to the validity of the policy contract.

1. We do not deem it necessary to decide the question of jurisdiction, or to determine whether the attorney's fees claimed should be regarded as costs or as damages. In view of the language of the statute of this State in allowing the recovery of 25 per cent. on the liability, in addition to the loss, and the decisions of this court and of the Supreme Court, we are inclined to think that attorney's fees allowed in such cases are a substantive part of the damages and are not "costs." Civil Code (1910), §§ 2549, 5992; *Missouri Insurance Co.* v. *Lovelace,* 1 *Ga. App.* 449 (6), (58 S. E. 93); *Traders Insurance Co.* v. *Mann,* 118 *Ga.* 385 (45 S. E. 426). Irrespective of this question, however, the decision of the learned Judge presiding in the United States Circuit Court is final on the subject of jurisdiction. Peters *v.* Queen Ins. Co. (C.C.), 182 Fed. 112. Even if the judge of the State court had granted an order of removal when the application was made to him, it was the duty of that court, when the Federal court remanded it to the State court, to receive jurisdiction and proceed as if the erroneous order of removal had not been granted. 4 Fed. Stat. Annot. 258, 259, and citations. In other words, the jurisdiction of the State court would not have been lost, but only suspended; and when the case was remanded, the question of jurisdiction was finally settled. We do not mean to say that the defendant, when the application to remove was refused in the State court, could not have preserved exceptions pendente lite, or that when the judge of the Federal court remanded the case to the State court for trial, an appeal could not have been had to the United States Circuit Court of Appeals. But neither was done, and the question of jurisdiction is settled by the decision of the Federal court remanding the case to the State court for trial.

2. Was the contract valid? The plaintiff in error says not, because M. Mathis was dead when the policy was issued, and a dead man can not contract, and there must be "parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject-matter upon which it can operate." Civil Code (1910), § 4222. Certainly the insurance company made a contract of insurance with some one. It received from some one the premiums as a consideration for the contract, and there was the property insured as the subject-matter. It may be conceded that a "dead person" can not make a contract. But can not a person having an insurable interest in the property make a contract of insurance in the name of the dead person, for the benefit of his estate, or of some one having an insurable interest in the property covered by the contract? Would not the "other party" to the contract, who had paid the company the premium, or the party having an interest in the property, be the applicant for the insurance? As matter of common knowledge, we know that business is frequently continued in the names of individuals or firms long after the individuals, or all the members of the original firm, have died. Is it unusual, unreasonable, or illegal for the heirs of an estate before division, or the legatees before distribution, or the legal representatives of an estate, to continue the business and to make contracts in the name of the testator or intestate? It can not be doubted that if the insurance company in the instant case had knowledge when the policy was issued that "M. Mathis" was dead, and knew who were the real parties at interest, it would be bound. It could not in good faith, with such knowledge, make the contract and receive the premium and then deny the validity of the contract.

Every reasonable intendment and every reasonable presumption must be indulged, to uphold the contract. Is it unreasonable that the company should be deemed to know with whom it contracted, and whether M. Mathis was then alive, or, if dead, whether the person who paid the premium was presumptively interested in the property? The evidence does not positively disclose who did in fact take out this policy, or who paid the premiums. Probably M. Mathis during life took out the original policy and his children and heirs renewed it from year to year in his name. There had been no division of the estate. We hold it fairly inferable that

some person with an insurable interest in the property made the contract with the company and paid the premiums, in the absence of positive evidence to the contrary, and we are unwilling to declare the contract of insurance invalid at the instance of the insurance company. *It was alive,* made the contract, received consideration therefor in the premium, and the loss insured against admittedly occurred. To declare the contract invalid would certainly damage the "other party." To uphold it can not damage the company, for it agreed to pay the loss to the one having an insurable interest in the property or to his personal representatives, and the contingency insured against happened.

Besides, we think the provisions of the policy contract itself cover the very question now discussed. The policy expressly provides: "Wherever in this policy the word ' insured ' occurs, it shall be held to include the legal representatives of the insured." We are aware that this provision is inserted in policies of insurance to meet any change in the title caused by the death of the insured; but it is broad enough to embrace the facts of the present case. Under this provision the contract was made not only for the benefit of the "insured," but for his "legal representatives." Here the facts show that the plaintiff is not only the "legal representative" of the insured, but is part owner of the property insured, in both capacities having an insurable interest. This clause in the policy establishes a privity between the company and the legal representatives of the insured. Where no hurtful fraud is proved in the procurement of a contract of insurance, and the premiums are paid at the time of the loss, the company should be held to performance, unless some reason stronger than mere technical objection is presented, and one demanded by substantial justice and clear law. We conclude that the trial judge did not err in holding that the contract was valid.

3. Neither do we think that there was any necessity to reform the contract, or that the administratrix was not the right party plaintiff. We presume, from the fact that an administratrix was appointed, in view of the admission that the intestate left no debts, that the estate had not been settled by consent of the heirs. The administratrix was the personal representative of the intestate, to collect debts due the estate. Indeed, we think the insurance company could legally have required the appointment of an administrator before paying the loss. Under the Civil Code (1910), §§ 3657,

3929, 3933, and the decision in *Greenfield* v. *McIntyre,* 112 *Ga.* 691, the heirs of the intestate insured could not bring suit on the policy without alleging and proving that there was no administration.

4. The verdict for attorney's fees and damages was not warranted, for two reasons: First, the amount claimed to be due on proof of loss and sued for was $1,500, and the verdict was for $1,300. This was equivalent to finding that the company was justifiable in resisting the claim. *Southern Mutual Insurance Co.* v. *Turnley,* 100 *Ga.* 303 (27 S. E. 975) ; *Liverpool &c. Insurance Co.* v. *Ellington,* 94 *Ga.* 785 (21 S. E. 1006), *Travelers Insurance Co.* v. *Sheppard,* 85 *Ga.* 765 (2), (12 S. E. 18). The evidence did not show bad faith in refusing to pay the loss, and the legal questions made were sufficiently doubtful and important to warrant the company in contesting the suit. The judgment is affirmed, with direction that the plaintiff write off from the judgment the amount recovered as attorney's fees and damages.

*Judgment affirmed, with direction.*