## CANAL SAVINGS & HOMESTEAD ASS'N v. HARMONIA INS. CO. OF BUFFALO, N. Y. *

### No. 16402.

Court of Appeal of Louisiana. Orleans.

May 30, 1938.

Solomon S. Goldman, of New Orleans, for appellant.

St. Clair Adams & Son, of New Orleans, for appellee.

WESTERFIELD, Judge.

Joseph Victor owned a house and lot in the City of New Orleans encumbered with a homestead mortgage loan of $1800.00. He died in 1931. A policy of fire insurance of the face value of $2500.00 was issued by the Harmonia Insurance Company of Buffalo, New York, in his name and delivered to

*Rehearing denied June 17, 1938.

the Canal Savings & Homestead Association, his mortgagee, on September 9th, 1932, about one year after his death. On July 14, 1933, Victor's property was damaged and, on September 6, 1933, was totally destroyed by fire. A proof of loss covering the first fire was submitted by Bertha Dutton Victor "Widow and Heir to the Estate of Joseph Victor", under date of July 31st, 1933, and on October 6, 1933, after an investigation which disclosed all the facts concerning the death of Victor and the subsequent issuance of the policy, an interpleader suit was filed in the Civil District Court under docket No. 204,057, by the defendant, in which liability was admitted and the sum of $217.19, the amount of the loss, deposited in the Registry of the Court. On August 22, 1933, a five day notice of cancellation, pursuant to the terms of the policy, was addressed to Joseph Victor, 2009 Forstall Street, New Orleans, by the general agents of defendant in Dallas, Texas, and a copy of this notice of cancellation sent to the plaintiff, the holder of the mortgage note and the nominee in the mortgage clause contained in the policy. Both letters were sent by registered mail, the one addressed to Victor being returned by the Post Office Department, and the one addressed to the homestead company being received by it on August 25, 1933. The Insurance Company subsequently declined to pay the second loss and two suits were filed against it, one by Bertha Dutton, widow of Joseph Victor, which is now pending in the Supreme Court under the docket No. 34,768, and the present suit by the homestead company which has been appealed to this Court from a judgment in favor of the defendant insurance company.

The suit is defended upon the following grounds:—

1. That the issuance of a policy of insurance to a deceased person creates no contract of insurance and is void from its inception; and

2. If the contract had any validity it was cancelled prior to the second fire.

With reference to the first defense, counsel for plaintiff directs our attention to the case of Queen Insurance Company v. Peters, 10 Ga.App. 289, 73 S.E. 536, in which the precise situation under consideration here obtained. The court in holding that the policy was not void, said (page 537):—

"Certainly the insurance company made a contract of insurance with some one. It received from some one the premium as a consideration for the contract, and there was the property insured as the subject-matter. It may be conceded that a 'dead person' cannot make a contract. But cannot a person having an insurable interest in the property make a contract of insurance in the name of the dead person, for the benefit of his estate or some one having an insurable interest in the property covered by the contract? Would not the 'other party' to the contract, who had paid the company the premium, or the party having an interest in the property, be the applicant for the insurance? As matter of common knowledge, we know that business is frequently continued in the names of individuals or firms long after the individuals, or all the members of the original firm, have died. Is it unusual, unreasonable, or illegal for the heirs of an estate, before division, or the legatees before distribution, or the legal representatives of an estate, to continue the business and to make contracts in the name of the testator or intestate?"

No other authority has been cited to us, and we know of none involving the same, or similar facts, in consonance with or opposed to the holding of the Georgia Court. Counsel for plaintiff also contends that the defendant is estopped from making this defense because of the payment of the first fire loss with knowledge of the fact that Victor was dead before the policy issued and that, therefore, whatever may be said of the policy when originally issued, the recognition of a claim under it and the payment thereof, after knowledge of all of the facts, was an affirmation of its validity and he points to the notice of cancellation in which the company offered to pay, upon surrender of the policy, the pro rata unearned premium, as an indication that it regarded the policy as valid when issued, for otherwise it would be "a rank inconsistency for the company to argue that the insurance was void, ab initio; and on the other hand, charge the insured for the term the insurance was in force".

The legal questions raised by the contentions of counsel in regard to the validity vel non of the contract of insurance are novel and interesting, but the view which we take of the case renders their consideration unnecessary.

For the sake of argument, we will say that the insurance contract was valid and that the insurer was estopped from contest-

ing its validity, was it in effect when the second fire occurred? In other words, was the effort to cancel the policy effective so far as plaintiff is concerned? It is contended that plaintiff was a party to a separate contract with the insurer as the nominee under the Standard Mortgage Clause of the policy. Officer v. American Eagle Insurance Company, 175 La. 581, 589, 143 So. 500, is cited in support of that contention. That case seems to us to be authority to the contrary. Be that as it may, there is certainly a separate and different provision in the policy for cancellation under the Standard Mortgage Clause, as affecting the mortgagee, from the general provision for cancellation as affecting the insured. For example, the mortgagee is protected for five days after the policy ceases to cover the insured, as appears by a comparison of the two provisions covering cancellation, as follows:—

"This policy shall be cancelled at any time at the request of the insured; or by the Company by giving five days notice of such cancellation. If this policy shall be cancelled as hereinabove provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this company by giving notice it shall retain only the prorata premium".

"This company reserves the right to cancel this policy at any time as provided by its terms; but in such case this policy shall continue in force for the benefit only of the mortgagee for ten days after notice to the mortgagee of such cancellation, and shall then cease, and this company shall have the right on like notice to cancel this agreement."

It is not disputed that a notice of cancellation was received by the plaintiff mortgagee more than ten days before the loss occurred upon which this suit is based but, it is said, that under the established jurisprudence, particularly of this Court, the attempted cancellation was ineffective because the unearned premium was not tendered with the notice of cancellation.

The authorities on this point are divided. This Court in German Fire Insurance

Company v. Tooley, 9 Orleans App. 78, held that a tender of the unearned premium was necessary, and to the same effect are the following: Tisdell v. New Hampshire Fire Insurance Co., 155 N.Y. 163, 49 N.E. 664, 40 L.R.A. 765; Buckley v. Citizens' Ins. Co., 188 N.Y. 399, 81 N.E. 165, 13 L.R.A.,N.S., 889; Southern Insurance Company v. Williams, 62 Ark. 382, 35 S.W. 1101; Gosch v. Firemen's Insurance Co., 33 Pa.Super. 496; Phoenix Assur. Co. v. Munger, etc., Co., 92 Tex. 297, 49 S.W. 222; Chadbourne v. German-American Ins. Co., C.C., 31 F. 533. The following hold the opposite: Schwarzchild Co. et al. v. Phoenix Ins. Co., C.C., 115 F. 653; El Paso Reduction Co. v. Hartford Ins. Co., C.C., 121 F. 937, 939; Mangrum v. Law Union & Rock Ins. Co., 172 Cal. 497, 157 P. 239, L.R.A.1916F, 440, Ann.Cas.1917B, 907; German Union Fire Ins. Co. v. Clarke Co., 116 Md. 622, 82 A. 974, 39 L.R.A., N.S., 829, Ann.Cas.1913D, 488. But all these cases are concerned with cancellation as affecting the insured under the specific policy provision requiring return of unearned premium. There is no requirement that the mortgagee receive the unearned premium either in connection with the notice of cancellation or otherwise. The only requirement is that the mortgagee shall receive ten days' notice of cancellation instead of five days, which is the notice required to be given the insured. It is admitted that the notice given to the plaintiff in this case was received more than ten days before the fire loss occurred. As a matter of fact, the record indicates that an officer of the plaintiff corporation endeavored to have insurance placed upon the property after receipt of the notice of cancellation. Under the peculiar circumstances of this case, the notice of cancellation addressed to Victor could have no effect whatever. He had been dead more than a year at the time the notice was sent to him so that the only effect which the notice of cancellation could have would be with respect to the mortgagee. Plaintiff having received the notice which the policy required to be given it, and the fire having occurred after the effective date of the cancellation of the policy, there can be no recovery.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.