HIGGINS, Justice.
 

 Mrs. Bertha Dutton, widow of Joseph Victor, duly qualified administratrix of the succession of her deceased husband, instituted this action against the Harmonía Insurance Company of Buffalo, New York, to recover the sum of $2,115.80, which is alleged to be due under the provisions of a $2,500 fire insurance policy issued in the name of Joseph Victor and covering the property No. 2009 Forstall Street, New Orleans, which was totally destroyed by fire on September 6, 1933. She also prayed for 12% penalty and attorney’s fees of $400.
 

 The insurance company, in its answer, denied that there was ever a valid contract of fire insurance in force on these premises, because at the time of the issuance of the policy Joseph Victor was dead, and therefore the contract was null and void, ab initio, as it was lacking in the essential element of a party legally capable of contracting. In the alternative, the defendant pleaded that if the contract be held to be valid, that it had been cancelled, in accordance with its provisions, by giving a five day written notice prior to the time of the fire.
 

 The plaintiff made the following replies to these defenses: (1) That the death of Joseph Victor, the owner of the premises, prior to the issuance of the policy was an immaterial circumstance under the facts of the case and the provisions of the policy, the paramount intention of the parties concerned being to insure the premises in question in favor of those having an insurable interest, for a certain sum at an agreed premium, regardless of the name inserted in the policy as the assured; (2) That the company was estopped to deny the legality of the policy, because it had previously settled another claim for loss by fire under the same policy when the company’s officials knew that Joseph Victor had died before the policy was issued and that his widow, plaintiff herein, was the widow in community and sole heir of the deceased; and further, because the company, in attempting to cancel the policy by giving a five day written notice under a clause in the policy, after being apprised of the fact that Joseph Victor had been dead at the time the policy was issued, retained a part of the premium claimed to have been earned up to the date of the cancellation of the policy and, thereby, conceded that the contract was a valid and binding one;
 
 (3j
 
 That she had not received any written notice from the company cancelling the policy.
 

 The learned trial judge sustained the first defense and held that the plea of estoppel was without merit, and dismissed the suit. The plaintiff appealed.
 

 In this Court, the defendant filed a motion to dismiss the appeal for lack,of jurisdiction, ratione materise. It is pointed out that while the plaintiff prays for the sum of $2,115.80, the record shows that the property was mortgaged and that there was a balance due the Canal Savings & Homestead Association of $1,298,36, which, if the defendant is liable, is due the home
 
 *77
 
 stead under the Louisiana Standard Mortgage Clause, or Union Mortgage Clause, in its favor contained in the policy. Therefore, it is said that the amount in controversy between the plaintiff and the defendant is not $2,115.80, but the sum of $817.44. Defendant contends that the homestead, as mortgagee, had separate and distinct insurance protection to the extent of its interest in the property and was brought into the relation of “privy” with the insurer, by virtue of the Standard Mortgage or Union Mortgage Clause of the policy, under the doctrine announced in the case of Officer v. American Eagle Fire Insurance Co., 175 La. 581, 143 So. 500.
 

 While it is true that the record shows the deceased mortgaged the premises to the homestead and there is a balance due, as stated, and that the plaintiff in her petition has admitted that the homestead had an insurable interest in the premises and a right to its pro rata of the proceeds of the policy, and that she expected the homestead to file an intervention herein, which-it failed to do, nevertheless, this is a suit by plaintiff for a sum in excess of $2,000 exclusive of interest and cost, which is all that is required to give this Court jurisdiction under Article 7 of the Louisiana Constitution of 1921. Furthermore, section 10 of this Article specifically provides that the Supreme Court shall have appellate jurisdiction in civil suits “where the amount in dispute or the fund to be distributed, irrespective of the amount therein claimed, shall exceed two thousand dollars exclusive of interest * * In the instant case, the insurance company denies its liability for the entire amount claimed — so that amount is in dispute. The plaintiff was the alleged •owner of the destroyed improvements and, although the property was encumbered with the mortgage, this did not-divest her of her insurable right in the whole property. The purpose of an owner placing fire insurance on mortgage -premises is not only to protect his equity in the property over and. above the amount of the mortgage, but also to protect himself from loss in the event the premises are destroyed by fire, the insurance providing funds with which to pay the claim of the mortgagee. It is obvious that the destruction of the building by fire would not in itself discharge the debt due the homestead. However, in any event, if plaintiff is successful, “the fund to be distributed” will be in excess of $2,000.
 

 It is our opinion that this Court has jurisdiction and the motion to dismiss the appeal is denied.
 

 Joseph Victor married Bertha Dutton and thereafter they acquired the premises No. 2009 Forstall Street, this City, placing a mortgage thereon for the sum of $1,800, in favor of the Canal Savings & Homestead Association, and which Association, together with the assured, had Calhoun & Barnes, Inc., agents for the Lincoln Insurance Company, issue a $2,500 fire insurance policy covering the premises in question. It was customary for the Homestead to secure a new policy at the expiration date of the old policy. Victor paid the premiums by reimbursing the Homestead, and finally reduced the mortgage to the sum of $1,298.36. He died in 1931. Due to the fact that the property was located on the
 
 *79
 
 outskirts of the City, the Lincoln Insurance Company concluded that it was not interested in further insuring the premises at the premium charged, and Calhoun & Barnes, Inc., also acting as agents of the defendant insurance company, had it issue the policy sued upon, on September 9, 1932, increasing the rate from 50^ to $1 per hundred. Neither the Homestead nor the insurance company’s representatives, at that time, knew of Joseph Victor’s death, and the policy was issued in his name.
 

 The widow testified that, after the policy was issued, when she paid one-half of the premium which was due, she informed the fire insurance ’ company’s representative, in its office, that her husband was dead; that nothing was then said or done about cancelling the policy and the premium was accepted arid never returned.
 

 On July. 14, 1933, a fire caused an estimated loss of $217.19 to the property, and on July 31, 1933, upon the blanks furnished by defendant company the plaintiff executed and filed with the company the proof of loss in her name, as “the widow and sole heir of the estate of Joseph Victor,” in which documents there appeared the information regarding the death of Joseph Victor in 1931, and that the widow had supported her claim with affidavits showing that she was the widow and sole heir of the deceased.
 

 Defendant’s evidence shows that the fire insurance, company’s agent who writes the insurance does not handle the adjustment of losses, and,, in the event of a fire, that this phase of the business is handled by an adjustment company. The loss in the instant case had been investigated by the New Orleans Adjustment Company, defendant’s representative, prior to the execution of the proof of loss by the widow, and the adjustor attached a complete statement of the investigation to the' proof of loss, which was sent to the general agents of the defendant fire insurance company at Dallas, Texas, on August 2, 1933. The widow’s residence is stated in these documents to be at No. 921 St. Peter Street, New Orleans. When the company, received these reports, it did not question the validity of the policy or communicate with the. claimant denying liability, but, on the contrary, it recognized its liability and on October 6, 1933, filed an interpleader suit -against the Homestead and the widow, in the Civil District- Court, and deposited the sum of $217.19 in the registry of the court, which was the agreed amount of the loss.
 

 Prior to the filing of the interpleader suit, the defendant, on August 22, 1933, mailed a written notice of the cancellation of the policy under the “five day -cancellation clause” provided for therein, addressed to Joseph Victor at No. 2009 Forstall Street, New Orleans, by registered mail, with instructions to the Post Office “to deliver to the addressee only.” The registered letter containing the notice was not delivered, due to Joseph Victor’s death, and was returned to the company, which made no further effort to communicate with the deceased’s legal representatives or heirs. Bertha Victor, the widow, never received a notice of cancellation and the company made no effort to secure the return of the
 
 *81
 
 policy from the widow, and retained the premium claimed to have been earned up to the date of the cancellation of the policy.
 

 On September 6, 1933, a second fire occurred in which the insured improvements were totally destroyed. Proper proof of loss was filed with the company, but it denied liability, stating that, as it had not been apprised of the fact that Joseph Victor was dead at the time the policy was issued, it was void ab initio, and, if not null, was validly cancelled before the fire occurred. This suit followed'.
 

 The policy contains these two pertinent clauses:
 

 “This entire policy, unless otherwise provided by agreement and endorsed hereon or added hereto, shall be void * * * if any change, other than by death of the insured takes place in the interest, title or possession of the subject of insurance * * * ”
 

 “Where ever in this policy the word ‘insured’ occurs, it shall be held to include the legal representative of the insured, # * >j«
 

 Thus, it is seen that the validity of the policy is not dependent upon the insured remaining alive during the entire term of the contract. By the first above quoted clause, the policy expressly covers the situation where the loss occurred after the death of the person named as the insured. Hence, if the continuing existence of the insured was not necessary to the contract of insurance remaining in force — is there any reason why the contract of insurance should not be valid, under the facts and circumstances of this case, even if the party named as the insured did not exist when the policy was issued? The above clauses also show that the company was willing to insúre the property against loss by fire, no matter who owned it, because the legal representatives or heirs of the deceased owner are certainly different individuals. They also indicate that the company considered the individual who owned the property an immaterial circumstance to the risk, for it did not know whom his representatives or, heirs would be. In short, they were willing to insure the property, regardless of who owned it. . The evidence proves that the defendant’s representatives did. not even know Joseph Victor.
 

 From the case of Queen Ins. Co. v. Peters, 10 Ga.App. 289, 73 S.E. 536, the facts of which are very similar to the one at bar, we quote [page 537]:
 

 “The policy of insurance sued upon was issued by the Queen Insurance Company January 2, 1908, in the name of ‘M. Mathis’ as the insured; no other person being mentioned, nor any words of description added. The fire which destroyed the property covered by the policy took place on December 8, 1909. The policy was in force at the time of .the fire. On February 1, 1909, the plaintiff, Mrs. Beulah Peters, was duly appointed administratrix upon the estate of M. Mathis, who was dead when the policy was issued, having died in January, 1897. He-left surviving him a widow and six children, the plaintiff being one of them, and the widow was still in life when the suit was filed. * * *
 

 
 *83
 
 “Was the contract valid? The plaintiff in error says not, because M. Mathis was dead when the policy was issued, and a dead man cannot contract, and there must be ‘parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject-matter upon which it can operate.’ Civil Code 1910, § 4222. Certainly the insurance company made a contract of insurance with some one. It received from some one the premium as a consideration for the contract, and there was the property insured as the subject-matter. It may be conceded that a ‘dead person’ cannot make a contract. But cannot a person having an insurable interest in the property make a contract of insurance in the name of the dead person, for the benefit of his estate or some one having an insurable interest in the property covered by the contract? Would not the ‘other party’ to the contract, who had paid the company the premium, or the party having an interest in the property, be the applicant for the insurance? As matter of common knowledge, we know that business is frequently continued in the names of individuals or firms long after the individuals, or all the members of the original firm, have died.. Is it unusual, unreasonable, or illegal for the heirs of an estate, before division, or the legatees before distribution, or the legal representatives of an estate, to continue the business and to make contracts in the .name of the testator or intestate ? It cannot be doubted that if the insurance company in the instant case had knowledge when the policy was issued that ‘M. Mathis’ was dead, and knew who were the real parties at interest, it would be bound. It could not in good faith with such knowledge make the contract and receive the premium, and then deny the validity of the contract.
 

 “Every reasonable intendment and every reasonable presumption must be indulged in to uphold the contract. Is it unreasonable that the company should be deemed to know with whom it contracted, and whether M. Mathis was then alive, or, if dead, whether the person who paid the premium was presumptively interested in the property ? The evidence does not positively disclose who did in fact take out this policy, or who paid the premiums. Probably M. Mathis during his life took out the original policy, and his children and heirs renewed it from year to year in his name. There had been no division of the estate. We hold it fairly inferable that some person with an insurable interest in the property made the contract with the company and paid the premiums, in the absence of positive evidence to tthe contrary, and we are unwilling to declare the contract of insurance invalid at the instance of the insurance company. It was alive, made the contract, received consideration therefor in the premium, and the loss insured against admittedly occurred. To declare the contract invalid would certainly damage the ‘other party.’ To uphold it cannot damage the company, for it agreed to pay the loss to the one having an insurable interest in the property or to his personal representatives, and the contingency insured against happened.
 

 
 *85
 
 “Besides, we think the provisions of the policy contract itself cover the very question now discussed. The policy expressly provides: ‘Whenever in this policy the word “insured” occurs, it shall be held to include the legal representatives of the insured.’ We are aware that this provision is inserted in policies of insurance to meet any change in the title caused by the death of the insured; but it is broad enough to embrace the facts of the present case. Under this provision the contract was made, not only for the benefit of the ‘insured,’ but for his ‘legal representatives.’ Here the facts show that the plaintiff is not only the ‘legal representative’ of the insured, but is part owner of the property insured, in both capacities having an insurable interest. This clause in the policy establishes a privity between the company and the legal representatives of the insured. Where no hurtful fraud is proved in the procurement of a contract of insurance, and the premiums are paid at the time of the loss, the company should be held to performance, unless some reason stronger than mere technical objection is presented, and one demanded by substantial justice and clear law. We conclude that the trial judge did not err in holding that the contract was valid.
 

 “Neither do we think that there was any necessity to reform the contract, or that the administratrix was not the right party plaintiff. We presume, from the fact that an administratrix was appointed, in view of the admission that the intestate left no debts, that the estate had not been settled by consent of the heirs. The administratrix was the personal representative of the intestate, to collect debts due the estate. Indeed, we think the insurance company could legally have required the appointment of an administrator before paying the loss. * * * The heirs of the intestate insured could not bring suit on the policy without alleging and proving that there was no administration.”
 

 It will be noted that the above quoted provision of the policy there involved is identical with the quoted provision of the policy in the instant case.
 

 In the case of Guccione v. New Jersey Ins. Co. of Newark, N.J., La.App., 167 So. 845, 852, the fire insurance policy had been issued in the name of the husband, when it should have been issued in the name of the wife, who was the record owner of the property, and the company refused to pay the loss. The Court reformed the policy and gave judgment to the plaintiff, saying:
 

 “ * * * The defendant insurance company attempts to screen itself from liability behind a maze of technicalities, which cannot be favored in the interest of the administration of justice. Its endeavor to defeat recovery upon the grounds presented we find to be inconsistent with the public policy of this state, as announced by the Legislature in Act No. 222 of 1928, providing, in substance, that breaches of warranties and conditions contained in policies of fire insurance shall not have the effect of voiding the same unless such breach would
 
 *87
 
 increase either the moral or the physical hazard under the policy.”
 

 In the case at bar, defendant did not attempt to prove that by having the policy issued in the name of the deceased and former owner of the property anything was added to the moral or physical hazards under the policy. This, apparently, was the company’s view, for after being fully notified and cognizant of the status of the ownership of the property, prior to the fire of September 6, 1933, it elected to consider the contract as a valid one, by first adjusting the previous claim of $217.19 with the homestead and the plaintiff as widow and sole heir of the deceased. Furthermore, after knowing that Joseph Victor had been dead at the time of the issuance of the policy on September 9, 1932, the company again elected, on August 22, 1933, to treat the contract as a valid one by attempting to cancel it by giving a five-day' written notice, in accordance with its provisions. This áction definitely shows the company’s intention, after having all of the facts and circumstances of the case before it,-to consider the contract as binding, — for it retained the premium claimed to have been earned up to the date of the cancellation. The company’s actions in the respects above stated are pertinent in showing that in construing the provisions of the policy, and particularly those above quoted, it considered the. mere name in which the property was insured unimportant as far as the moral or physical hazards assumed by it were concerned. In short, the company’s own interpretation of the policy under the facts is pertinent in showing that the company considered it an unimportant circumstance that the property stood in the name of the deceased person at the time the policy was issued. It was a mere oversight of a technical matter that did not place the insurer at a disadvantage, because the company was dealing with the real parties who had an insurable interest in the property and the parties definitely agreed upon the amount of the policy, the premium, and the premises to be covered. The policy was issued and delivered and the premium paid and retained by the company. Therefore, it is our opinion that the policy was a valid contract of insurance.
 

 The above conclusion makes it unnecessary for us to consider the plea of estoppel, which is based upon substantially the same facts.
 

 The attempted cancellation of the policy through written notice under the five-day clause of the policy was inoperative and of no effect, because the insurance company, by it own actions, prevented the receipt of the notice by the widow of the" assured. The company at that time, knew that Joseph Victor was dead and knew the name and address of his widow and sole heir, for at that time they were dealing with her, as such, in the adjustment of- the $217.19 claim. In spite of this information, its representatives mailed, by registered letter, the notice to Joseph Victor at No. 2009 Forstall Street, instead of addressing and sending it to the widow at No. 921 St. Peter Street. - Even after the registered letter was returne.d,, the defendant admits
 
 *89
 
 it made no further attempt to communicate with the legal representative of the deceased. At that time, the company was considering the policy as a valid .one, as indicated by its actions in trying to cancel it, in accordance with its provisions. The same policy contained clauses which made it necessary, in the light of that view, to deal with the. legal representative of the assured. This, the company failed to do, and so the attempted cancellation was without any legal effect. Long v. Home Indemnity Co. of New York et al., La.App., 169 So. 154.
 

 It is our opinion that the company is liable.
 

 No attempt has been made in this record to dispute the correctness of the amount of the claim or proof of loss. It will, therefore, be allowed. A twelve per cent, penalty for damages and a reasonable attorney’s fee in the sum of $350 for the prosecution of this Suit for the collection of the loss is allowed, in accordance with section 3, Act No. 168 of 1908.
 

 For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the lower court is annulled and set aside, and it is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Mrs. Bertha Dutton, widow of Joseph Victor, administratrix of the Succession of Joseph Victor, and against the defendant, Harmonia Fire Insurance Company of Buffalo, N. Y., in the sum of $2,115.80, together with 12% thereon, as damages, and $350 attorneys’ fees; and for all costs of court.