The defendant appeals from a judgment of the district court awarding plaintiff compensation at the rate of $19.50 per week, for a period not to exceed four hundred (400) weeks, beginning February 6, 1944.
Prior to November 8, 1937, the plaintiff owned and operated a saw mill and shingle mill in Grant Parish, near Pollock. On that date he made a dation en paiement of apparently all the property he then owned, in payment of an alleged debt due to his wife. After this transfer his wife continued the operation of the mills on her own account, and appears to have been fairly successful.
Plaintiff is a veteran of world war I, and has for a number of years suffered from disability of one kind or another, and has been hospitalized and paid compensation as a disabled veteran, ranging from $115 down to $37.50 per month, and at the time of the trial of this case was being paid $50 per month. He was not, however, until this accident, totally disabled, and operated the mills until he transferred them to his wife.
On August 24, 1942, he sustained an injury to his left hand, in which he lost the ring finger and his other fingers and thumb are stiffened, though the thumb and index finger can be used some. This injury was sustained while working as a sawyer. He worked as a sawyer at his wife's mill from January to August, 1943, and then didn't work any more until about January 1, 1944, because the saw mill was not being operated during that time.
On April 23, 1943, defendant issued a policy of compensation insurance to Mrs. Dovie F. McLain, covering her employees at the mills she operated. Plaintiff filed his suit directly against the insurer, as he had the right to do under the provisions of Act No. 20 of 1914, as amended.
On January 31, 1944, while performing his duties as sawyer at the mill, his right hand became engaged with the saw while it was running, and as a result all of the fingers on his right hand except the thumb and little finger, were severed, and most of the palm of his hand also. The thumb and little finger were also injured, and are practically useless.
[1] Defendant admits that for all practical purposes plaintiff is totally disabled, but it contends that on account of disability suffered on account of his war service, and the injury to his left hand, that he was already totally disabled, at least from 1942 when he sustained the injury to his left hand. The fact remains, however, that he was working, and according to the record in this case, earning at the rate of $30 per week. We conclude that plaintiff, as a result of the accident and injury sustained by him on January 31, 1944, is now totally and permanently disabled, and unless his demand is barred by the legal defenses urged by defendant, the judgment appealed from should be affirmed.
Before answering, defendant filed exception of no cause and no right of action, and in support of the exception of no right of action, sets forth the following reasons: "That plaintiff's petition discloses no right of action and that plaintiff has no legal right of action herein for the reason that plaintiff is the husband of Mrs. Dovie F. McLain; that a community of acquets exists between them as husband and wife; that the saw mill business in which the said plaintiff claims to have been injured belongs all or in part to the partnership and community of acquets and gains existing between the said plaintiff and his said wife; that any possible recovery by the plaintiff herein under the allegations of the petition would fall into the community of acquets and gains existing between him and his wife his alleged employer, and would in effect result in the community suing for an alleged debt which the said community owes itself, and on the further ground that under the allegations of this *Page 682 
petition, itself, the said plaintiff is a partner in community in operating the saw mill business in which he alleges he was hurt and could not be an employee of himself and the partnership community for which he claims to have been working under the law of Louisiana and particularly under the provisions of Articles of the Louisiana Civil Code 2399, 2424, 2332, 2334, 2403, 119 and 131; and for the further reason that the husband and wife cannot enter into a contract between themselves in Louisiana as to one being an employee of the other or otherwise. * * *"
At the time the exception was filed the case of McHenry v. American Employers' Insurance Co., 206 La. 70, 18 So.2d 656, had not been decided. After the decision in that case all the reasons set forth in the exception, except that the husband and wife cannot enter into a contract whereby one becomes the employee of the other, were abandoned. The exception was overruled. Defendant again urges it here. For the reasons hereafter set out, we are of the opinion that the exception was correctly overruled.
Plaintiff, on December 23, 1944, filed a motion to strike out certain allegations of the exception of no right of action, coupled with a plea of estoppel in which it is alleged that the defendant had full knowledge that plaintiff was one of the employees of the insured; that it collected premiums on the pay roll on which it had full knowledge that he was carried as an employee, and that by the terms of the contract it is especially estopped to plead coverture or legal incapacity of the insured. The plea of estoppel was referred to the merits, and after trial was overruled by the district judge. This plea will be hereafter noticed in this opinion.
Defendant in answer admitted the issuance of the policy; that plaintiff was injured. It contends, however, that the business was purported to be operated in the wife's name, but that in fact it was the business of plaintiff and the community existing between plaintiff and his wife, and was operated in the name of the wife to escape payment of debts and judgments against plaintiff which he owed prior to November 8, 1937. It denies that he was ever at any time an employee of the saw mill or that he was paid any wages. It alleges, on information and belief, that this whole claim is fictitious and is a conspiracy framed by plaintiff and his wife to wrongfully mulct defendant; that no contract of employment could legally be made between wife and husband; and if such was made it is illegal, null and void.
The answer also contained allegations in reference to the invalidity of the dation en paiement from plaintiff to his wife, but all testimony on this subject was excluded by the district judge, and this question is not now before us. In fact, the only questions, as we appreciate the argument and briefs, is that of estoppel, which is urged here by plaintiff, and that of the legality of the employment of plaintiff by his wife.
Defendant contends that under the provisions of Article 1790, R.C.C., and decisions of our appellate courts in a number of cases, the latest of which is Russo v. Russo, 205 La. 852,18 So.2d 318 (which cites many other authorities as well as Act No. 283 of 1928), there could have been no contract of employment of the husband by the wife in a business separately owned and operated by her; and for the further reason that if the wife is engaged in business for herself under the provisions of Article 131, R.C.C., the husband is also responsible for her debts, and if the wife owes him anything, he also owes the same debt; for the further reason that any recovery of compensation would be for the benefit of the community. 'We think, however, that this last contention is answered by the cases of Brownfield v. Southern Amusement Co., Inc., et al., 196 La. 73, 74, 198 So. 656 and McHenry v. American Employers' Insurance Co., 206 La. 70, 18 So.2d 656.
Defendant also contends that the insured and her husband conspired together to mulct the defendant; that the time book filed in evidence was all made up at one time after the accident to plaintiff, and that the other time books which the insured could not produce, because, she says, they were burned by Mrs. Ethel Perrine, a niece of plaintiff, who worked for insured, did *Page 683 
not carry the name of plaintiff as an employee. Defendant undertook to make out this defense by offering a statement made by Mrs. Perrine in July after the accident happened in January, to the effect that plaintiff was not an employee of the mill, was paid no salary, and that he continued to manage the mill, hire and fire employees, etc. When plaintiff did not place Mrs. Perrine on the stand as a witness, defendant called her as its witness, at which time she denied making the statement as written and signed by her, and, as a witness, said that plaintiff was on the pay roll and that she had at times given him his weekly pay.
Mr. T.C. McLure, an attorney of the Alexandria bar, who took the statement from Mrs. Perrine, says she made it; that it was written down on the typewriter by the secretary of Mr. Gist, counsel for defendant, and was read over to her and she signed it in his presence and that of the secretary. We believe what he says about the making of the statement.
[2] We are at a loss to understand why Mrs. Perrine made the statement unless it was true, and she now says it was not. At one time or the other she was not telling the truth. We do not know which time she told the truth, if she told it at all, and for this reason we believe we are fully justified in eliminating both her statement and her testimony from the case. In any event, the conclusion we have reached renders consideration of her as a witness in the case immaterial.
[3] Defendant calls attention to the fact that Mrs. McLain never had any bank account, never kept accounts of Victory Tax she owed, Social Security Tax and Withholding Tax due the Government. These are matters, as we view it, with which defendant has no concern. It appears that she paid her bills with cash. Defendant's collector knew this; at least, he knew that he was paid in cash. Many people try to avoid paying taxes and some of them get away with it. This of itself would not brand them as perjurers.
[4] Failure of plaintiff to call as witnesses the son who helped with the mill, other members of the family and the other employees of the mill is commented upon and it is suggested that failure to call them leads to the conclusion that if they had been called they would not have corroborated the testimony of plaintiff and his wife. It is unlikely that the other employees of the mill knew anything of the arrangement between plaintiff and his wife and it may be that the other members of the family did not know. We are in accord with the rule that the failure of a party to a suit to call a witness who has knowledge of issues in the case raises the presumption that the testimony of such witness, if called, would have been unfavorable.
Failure of plaintiff to call Mrs. Perrine as a witness is especially commented upon. In all probability plaintiff knew of the statement that she had given defendant and if he did know of the statement, this appears reason enough for him not to call her as a witness. As said above, she was called as a witness by defendant but she did not help the cause of either party to this suit.
We are at a loss to understand how defendant, after having dealt with Mrs. McLain as owner and having issued the policy to her as owner, can now deny that so far as it is concerned, she is the owner.
It is not disputed that at the time S.I. Gilbert solicited the insurance and at the time he delivered the policy, and before and after that time, he knew that plaintiff was operating the saw at the mill. In fact, he says plaintiff was into everything out there from rolling dice on. He denies, or at least he does not remember telling Mrs. McLain that her husband would be covered by the policy, but he does say that he told her that she would be covered for any sum for which she would be liable to her employees, on account of injuries sustained, but that she would not herself be covered by the policy, and that if she wanted insurance for herself she would have to arrange that some other way.
Mrs. McLain was asked:
"Q. What did Mr. Gilbert say to you relative to your husband's employment in the mill as sawyer? A. He was sawing for me when I taken (sic) the policy out. He asked me if I paid him like I did the other boys and I said I did. Mr. Gilbert told me that he knew I ran the shingle *Page 684 
mill but that I would not be covered by the policy. He said he knew I worked in a dangerous place, but that I was not covered but that Mr. McLain was.
"Q. Are you actually operating part of the shingle mill yourself in the manufacture of shingles? A. Yes, sir."
Gilbert also testified that he knew Mrs. McLain was running the mill, and on cross-examination, he said it was possible that plaintiff's name was mentioned as an employee when the insurance was sold to Mrs. McLain.
J.W. Clinton, who happened to be at the store on business at the time the policy was delivered, corroborates Mrs. McLain to the effect that Gilbert told her that her husband would be covered by the policy. Mrs. McLain also says that when Gilbert checked the pay rolls and collected the additional premiums, she showed him the time books carrying the name of her husband as an employee. Gilbert admits that he saw some time books there, but says he did not examine them as to names of employees, and accepted the total pay roll figures which Mrs. McLain gave him on a slip of paper.
Mrs. McLain also says that on February 8, 1944, some nine days after her husband was injured, she went to the office of Neilson-Breithaupt Underwriters, (agents of defendant), and carried her time book and ledger and one of the men in the office checked them and she paid a premium of $156.22. She took a receipt for this payment and it is filed in evidence. The time book, also in evidence, carries the name of plaintiff at the top of each page of the time book. Defendant already had notice of the accident and injury to plaintiff, because on the same day, February 8, Mr. McLure took a statement from her in reference to it. No effort was made to call any one from the office of Neilson-Breithaupt Underwriters as a witness to contradict the testimony of Mrs. McLain. The general rule is that when a party to a suit fails to call an available witness, it may be inferred that his testimony, if he had been called would have been unfavorable on the point at issue.
We believe the record in this case, as a whole, justifies the conclusion that the agents and representatives of defendant had knowledge that plaintiff was carried on the pay roll of the insured as an employee, and that it collected premiums on the policy based on a pay roll that included plaintiff. We think it is certain that such a collection was made on February 8, 1944, after the accident plaintiff sustained, and after defendant, through its agents and representatives had knowledge of the accident.
Having written the policy in favor of the wife, having collected and retained the premiums based on a pay roll on which plaintiff was included, as an employee, the claim now put forward by defendant that it is not liable because the wife could not enter into any contract of employment of her husband, comes with poor grace, to say the least.
[5] We are of the opinion that the knowledge of these agents and representatives of defendant is imputed to defendant, and that having accepted and retained the premiums of insurance calculated on the basis of a pay roll on which the name of plaintiff was included as an employee, it cannot now avoid liability on the technical ground that the wife could not employ her husband.
See: Story v. Hope Insurance Co., 37 La. Ann. 254; Union National Bank of New Orleans v. Manhattan Life Insurance Co., 52 La. Ann. 36, 26 So. 800; Corporation of Roman Catholic Church of Eunice v. Royal Insurance Co., Ltd., 158 La. 601,104 So. 383; Gitz Sash Factory, Inc., v. Union Insurance Soc. of Canton, Ltd., 160 La. 381, 107 So. 232; Dutton v. Harmonia Insurance Co. of Buffalo, New York, 191 La. 72, 184 So. 546; Richard v. Springfield Fire Marine Insurance Co. 114 La. 794, 38 So. 563, 69 L.R.A. 278, 108 Am.St.Rep. 359.
In the Dutton case, supra, the company had issued a fire insurance policy in the name of Joseph Victor, who was dead at the time the policy was issued. Mrs. Bertha Dutton, his widow, qualified as Administratrix of his succession. A loss of $217.19 occurred to the property, and Mrs. Dutton *Page 685 
executed the proof of loss as the widow and sole heir of deceased, as a result of which it was shown that Joseph Victor died in 1931. On October 6, 1933, the insurance company filed an interpleader suit against the widow and the mortgagee of the property and deposited the amount of the claim in the Registry of the Court. On August 22, 1933, prior to filing the interpleader suit, the defendant mailed a "five day cancellation notice" addressed to Victor at 2009 Forstall Street, New Orleans, with instructions to deliver to addressee only. It was, of course, not delivered, and was returned to the company.
On September 6, 1933, a second fire occurred in which the insured property was totally destroyed. The company defended the suit on the ground that there was never any contract of insurance in force, because the party named as owner was dead at the time the policy was issued. The insurance company, when it mailed the notice of cancellation, retained the amount of the premium that had been earned to the date of the notice of cancellation. Mr. Justice Higgins, speaking for the court, reversed judgment in favor of the defendant and gave judgment for plaintiff, citing among other cases, that of Queen Insurance Co. v. Peters, 10 Ga. App. 289, 73 S.E. 536, in which the facts were very similar to the Dutton case. The decree was rendered on consideration of the case on the merits. Mr. Justice Odom concurred in the decree on the ground that "the insurer is estopped under the circumstances here shown from denying liability."
We are of the opinion that the plea of estoppel tendered by plaintiff, and which was overruled by the lower court, should have been sustained, and for this reason we deem it unnecessary to a decision in this case to discuss the numerous authorities cited pro and con on the question of whether or not the wife could enter into a contract of employment of her husband.
For these reasons the judgment appealed from is affirmed at the cost of defendant in both courts. *Page 753