123 So.2d 901 (1960)
Mrs. Francis Turner MAGGIO, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.
No. 4999.
Court of Appeal of Louisiana, First Circuit.
October 6, 1960.
Rehearing Denied November 15, 1960.
Certiorari Denied January 9, 1961.
*903 Porteous & Johnson, New Orleans, for appellant.
Jos. A. Gladney, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER and TATE, JJ.
TATE, Judge.
This is a personal injury suit which, when before us upon exceptions, we remanded for trial on the merits. 102 So.2d 505. After trial the plaintiff was awarded damages in the amount of $26,814.10, and the defendant insurer appeals. The original plaintiff died following rendition of the judgment below and her legal heirs were substituted in her place by motion and order in this court. The substituted plaintiffs, the mother, brothers and sisters of the original plaintiff, have answered the appeal and seek an increase in the amount awarded.
The evidence shows that the original plaintiff, Mrs. Maggio, was a guest passenger in a 1951 Ford sedan driven by Mrs. Florence Gill, which was on November 20, 1952 involved in a serious accident. The defendant insurer had issued on October 30, 1952 a renewal of a policy covering operation of the automobile for a period of six months. The named insured in the policy was the McGehee Brothers Furniture Company, the employer of Mrs. Gill's husband.
The three principal questions raised by the present appeal are: 1) Was the policy coverage in effect at the time of the accident?; 2) Was Mrs. Gill's negligence a proximate cause of the accident in question?; and 3) Were the damages awarded either excessive or inadequate?

I.
The insurer's denial of coverage is based upon the circumstance that the named insured, McGehee Brothers, had formally transferred title to the vehicle to Mrs. Gill's husband on October 24, 1952, six days before the renewal of the policy for the term in effect at the time of the accident. Therefore it is alleged that at the time of the accident coverage of the vehicle had been terminated by its sale.
The plaintiffs contend that coverage is afforded the operation of the car by Mrs. Gill with the consent of her husband (a) because he was to the knowledge of the insurer's agent in fact the owner of the car even at the inception of the coverage as well as at its renewal, and (b) because it was the intention of the insured and the insurer, whose agent knowingly accepted premiums in part paid by Gill, that Mr. Gill be a co-insured.
L. C. Gill was a salesman employed by the McGehee Brothers Furniture Company. This firm required its employees to carry liability insurance on their personal cars for the limits of $50,000 per person and $100,000 per accident; with the consent of the employees, it took out such insurance for them from State Farm, listing both the employer and the salesman as joint named insureds. The premiums for coverage of the first $10,000/20,000 were deducted by the employer from the employees' salaries and were paid directly by the former to State Farm, together with the remainder of the premium (attributable to the coverage in excess of that amount), which was paid by the employer.
When Gill needed a new car in 1951, McGehee Brothers purchased it for him, and McGehee Brothers and Gill executed on April 27, 1951 an agreement under which title was to remain in the employer until *904 Gill had finished paying for the car through monthly installments deducted from his salary and commissions. On October 24, 1952, title was formally transferred by McGehee Brothers to Gill.
When the automobile was purchased, insurance was taken out with State Farm listing McGehee Brothers as the named insured. As in the case of the other employees, the premiums for coverage up to $10,000/20,000 were paid by Gill through deductions from his earnings both when the policy was originally purchased and every six months when the policy was renewed. On October 30, 1952, six days after the formal transfer of title to Gill, the policy was again renewed, although the only named insured was still shown as "McGehee Brothers."
Gill testified that he relied upon his employer, who deducted the premiums from his pay, to secure liability insurance coverage fully protecting operation of the car by himself or his wife at all times.
Gill's employers testified that it was their intention that Gill's car be fully and completely insured by State Farm when it was used by Gill or members of his family, and that the agreement between the employer-partnership and State Farm's agent by virtue of which State Farm received the firm's entire insurance business was that State Farm was to keep the entire fleet of automobiles owned or used by the partnership's salesmen fully insured at all times. Tr. 20, 48-9. Gill's employers further stated that State Farm's agent was fully informed of the circumstances surrounding Gill's acquisition of an interest in the insured automobile. Tr. 53.
State Farm's agent denied that there was any intention that Gill be listed as a co-insured, although he readily stated that if so requested he would have so listed him. The agent further testified that he knew that the automobile in question was purchased for Gill and that Gill was going to buy the car from the partnership. State Farm's agent further stated that he was specifically instructed by Gill's employers not to list Gill as a named insured.
We find no manifest error in the resolution by the jury, the trier of fact, of any conflict between the credibility of State Farm's agent and Gill's employers in favor of the testimony of the latter, nor in its finding that under the circumstances reflected by the evidence the intention of the parties to the insurance contract and of Gill was that the policy be issued to protect Gill as a co-insured as well as McGehee Brothers, his employer, which was the only named insured actually listed.
It is to be borne in mind that without contradiction the evidence reflects that, even with McGehee Brothers listed as the only named insured, the intention of the insurer and of all parties was to afford coverage at all times to Gill and to anyone driving the insured vehicle with his consent, whether in the course of his business duties or for family or other pleasures. The formal transfer of title admittedly did not increase any risk that the insurer had assumed by the issuance of the policy. The formal transfer of title to Gill upon the completion of Gill's payment of the installments under the conditional sale agreement did not change the actual ownership of the automobile, which from the inception of the insurance coverage had been owned by Gill, even though for financing purposes only the technical title had been retained by the employer as conditional vendor.[1]
Under the jury's evaluation of credibility, the insurer's agent had full knowledge of Gill's equitable ownership of the car even at the inception of the coverage and of Gill's contribution to payment of insurance premiums, and he also had knowledge that formal title was to be conveyed to Gill upon completion of his payment of the *905 purchase price. Following the formal transfer of title to Gill, the defendant insurer nevertheless accepted renewal premiums continuing coverage of the vehicle by the policy.
The insurer is therefore bound by the knowledge of the true intention of the parties that the insurance policy was issued for the protection also of Gill as an additional named insured. Boyd v. American Fire & Cas. Co., La.App. 2 Cir., 50 So.2d 688; Pacific Finance Co. v. Granite State Fire Ins. Co., La.App. 2 Cir., 45 So.2d 378; Monroe Air Park No. 1 v. American Aviation, etc. Ins. Co., La.App. 2 Cir., 41 So.2d 795. For if an insurance policy within the actual intention of the parties is issued for the protection of another than the named insured, the insurer may be held to have afforded such protection by the policy, or to be estopped to deny it; and the policy may be equitably reformed to show the true intention of the parties in this regard. Christo v. Eagle Star Ins. Co., 232 La. 28, 93 So.2d 682; Randazzo v. Insurance Co., etc., 196 La. 822, 200 So. 267; Dutton v. Harmonia Ins. Co., 191 La. 72, 184 So. 546; Pope-Gammill Lumber Co. v. Zurich Gen. Acc. & Liab. Ins. Co., 168 La. 422, 122 So. 278; Churchman v. Ingram, La.App. 2 Cir., 56 So.2d 297; Crowell v. New Hampshire Fire Ins. Co., La.App. 2 Cir., 147 So. 762.
It is also argued that nowhere does the policy provide that coverage shall be ipso facto terminated upon the sale of the vehicle by the named insured. The defendant relies upon "Insuring Agreement VIII", which pertinently provides only that:
"This policy applies only to accidents which occur * * * during the policy period, while the automobile * * * is owned, maintained and used for the purposes stated as applicable thereto in the declarations."
Since the policy "declarations" show that: "The purposes for which the automobile is to be used are: Pleasure and Business. * * *", it is suggested that coverage in favor of the named insured (McGehee Brothers) and those (including Mrs. Gill) driving with its express or implied permission was continued despite the technical change of title, especially since the automobile was still being "owned, maintained and used" for the same purposes as those for which insured. Having concluded that the parties intended to afford protection to Gill as a co-insured, it is unnecessary for us to discuss this additional contention.

II.
The trier of fact, the jury, found that the negligence of Mrs. Gill had contributed to the accident. The accident took place at the intersection of U. S. Highway 51 and Louisiana Highway 1064 in the center of what is stipulated to be the unincorporated village of Natalbany. At this intersection were a church, a school, some commercial establishments and a few residences. Under LSA-R.S. 32:223, as enacted at the time of the accident, the speed limit within any unincorporated village was 25 miles per hour.
The accident occurred when Mrs. Gill, the driver of the car in which the plaintiff was riding, was proceeding south at approximately 5:00 P.M. and struck a 1951 Chevrolet Sedan car driven by Jim Alexander, which had been proceeding north along the same Highway 51 and had turned left into Louisiana Highway 1079. The evidence reflects that the front wheels of the Alexander car has passed the western edge of the pavement and that the right side of Alexander's car was struck by Mrs. Gill's car, which was a total loss as a result of the accident.
The plaintiffs contend that Mrs. Gill was contributorily negligent in the accident in that she was approaching the intersection at a grossly excessive speed and in that she was deficient in lookout. Passengers in her car, Mrs. Maggio and Cosimo Martello, testified that a few minutes before the accident she had left Independence and *906 had been speeding approximately 80-85 mph when, upon their cautioning her, she had slowed to 65-70 mph. They further testified that Alexander commenced his turn across her path when she was about 250 feet from the intersection and that they at that time warned her and she immediately applied her brakes, but due to her excessive speed crashed into the Alexander car. Alexander's testimony shows that he believed that he was from 135-235 feet from Mrs. Gill when he began turning left very slowly, having put out his hand when the vehicles were 500 feet distant.
If indeed Mrs. Gill was approaching at a speed of 65-70 mph when Alexander commenced his turn approximately 200 feet distant from her, in an area where the statutory speed limit was 25 mph, then we think a speed of 65-70 mph on her part did indeed contribute to the accident, since had she been approaching at the legal speed at the time Alexander turned across her path, she could have stopped or slowed in time to have avoided the accident thereafter.
The insured, Mrs. Gill, testified however that she was approaching at a speed only of 35-45 mph and that Alexander turned in her immediate path, so that in effect she had no reasonable opportunity to avoid hitting the car which turned suddenly across her path.
The jury accepted as preponderant the contrary testimony that Mrs. Gill was approaching at an excessive speed and that Alexander had commenced his turn at a place sufficiently distant from her so that had she been approaching at a reasonable speed she could have reasonably avoided the accident. We are unable to find manifest error in this finding of fact by the trial court, based as it is upon an evaluation of no credibility of witnesses. We therefore affirm as non-erroneous this factual conclusion of the jury, noting that the trial judge denied an application for a new trial following the jury verdict. Thomas v. Mobley, La.App. 1 Cir., 1960, 118 So.2d 476; Mire v. St. Paul Mercury Indemnity Co., La.App. 1 Cir., 103 So.2d 553; Baker v. United States Fire Ins. Co., La.App. 1 Cir., 89 So.2d 405; Futrell v. Pacific Indemnity Co., La.App. Orl., 79 So.2d 903.
It was also alleged in brief that Mrs. Maggio was contributorily negligent in assuming the risk in driving with a driver who had been drinking and was proceeding at an excessive rate of speed. Aside from the circumstance that this defense was not proved by a preponderance of the evidence (see Hargett v. Chemical Service, Inc., La.App. 1 Cir., 116 So.2d 855), there is no allegation in the defendant's answer that the plaintiff was contributorily negligent, which defense therefore can not be considered. See Vidrine v. Southern Farm Bureau Cas. Ins. Co., La.App. 1 Cir., 105 So.2d 279, Hayes v. Illinois Central R. R., La.App. 1 Cir., 83 So.2d 160.

III.
The trial jury found that under the evidence Mrs. Gill's negligence was a proximate cause of the accident and that the defendant insurer's liability policy covered the operation by Mrs. Gill of the automobile at the time of the accident, but the jury specifically left to the court the duty to fix the amount of the damages. The trial judge then awarded Mrs. Maggio damages as follows: $10,000 for physical and mental pain and suffering and for permanent disability and disfigurement; $3,042.10 for medical expenses incurred as a result of the accident; and $13,772 for loss of wages, which was for the proven loss of earning between the date of the accident, November 20, 1952, and the date of Mrs. Maggio's remarriage on June 20, 1957.
Mrs. Maggio's legal heirs, who were substituted as plaintiffs following her death on May 12, 1959, have answered the appeal, requesting that the trial award be increased, because it allowed a manifestly *907 insufficient amount for pain and suffering and permanent disability, and because it allegedly incorrectly disallowed a further loss of earnings and future medical expenses for any period following Mrs. Maggio's remarriage.
As to the latter, counsel for the plaintiff strongly contends that the fact of remarriage did not terminate Mrs. Maggio's right to recover for a loss of earnings and for future medical expenses caused by an accident before the marriage, alleging this to be a cause of action accruing in favor of her separate estate. Assuming arguendo that counsel is correct in such contention, the trial court's award for any further loss of wages or future medical expenses will not be disturbed because no such damages following the remarriage are in fact proved by the record.
Mrs. Maggio undoubtedly suffered serious personal injuries. She sustained a fractured pelvis, a compound fracture of her left tibia, multiple rib fractures, and a fracture dislocation of her left ankle in the accident. Fortunately, except for the ankle injury, these injuries healed without significant residual within several months following the accident.
Between the time of the accident and October 1956, it was necessary for Mrs. Maggio to undergo three surgical procedures to restore the normal ankle mechanics, including an ankle fusion, and she sustained numerous episodes of discomfort as a result of a bone infection in the ankle (osteomylitis). At the time of the trial, her ankle was somewhat swollen and multiple scars were visible. Although the ankle was healed, the medical evidence reveals that Mrs. Maggio was disabled from performing any type of work which would require that she be constantly on her feet, because of the probability of a recurrence of pain and flare-ups of the chronic bone infection.
Although the award for general damages is somewhat conservative, considering all the circumstances of the record (including the substantial award for loss of wages which affords compensation also for much of the permanent disability reflected by the record), we are not prepared to hold that such award by the trial court is so manifestly insufficient in the light of awards for injuries of comparable severity as to require adjustment by this appellate court. See, e. g., Poirrier v. Audubon Ins. Co., La.App. 1 Cir., 120 So.2d 90, 91; Mershon v. Cutrer, La.App. 1 Cir., 100 So.2d 295; Kirby v. Great American Indemnity Co., La.App. 1 Cir., 98 So.2d 277; Matherne v. Crowther, La.App. 1 Cir., 96 So.2d 89.

Decree.
For the foregoing reasons, the judgment of the trial court is
Affirmed.
NOTES
[1] Cf. LSA-R.S. 9:4562, whereby under judicial interpretation thereof a conditional sale in Louisiana conveys immediate ownership to the conditional vendee.