No. 34,112

A. B. DEUTCH, *Appellee*, v. STANDARD SURETY & CASUALTY COMPANY OF NEW YORK, *Appellant*.

(86 P. 2d 529)

Opinion filed January 28, 1939.

*A. L. Berger,* of Kansas City, and *Richard C. Jensen,* of Kansas City, Mo., for the appellant.

*David F. Carson* and *Buford E. Braly,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This appeal centers about the question whether an employer's liability insurance policy had been effectively canceled before the happening of the accident which would have been covered by its terms.

Plaintiff was a merchant in Kansas City who had a varying number of employees doing different kinds of work.

On May 28, 1935, defendant issued to plaintiff a "workmen's compensation and employers' liability policy" whereby it agreed that for a period of one year it would pay to any employee injured in plaintiff's service whatever sum of money he would be entitled to under the terms of the compensation act. The consideration for this policy was to be based upon the varying number of plaintiff's employees and the varying nature of their work. Workers in plaintiff's furniture store were insured at 69 cents, chauffeurs at $1.17, clothing-store clerks at 22 cents. The minimum annual premium was fixed at $15. The advance premium was estimated at $27.85 and this amount was paid by plaintiff.

The policy provided for its cancellation at the option of either party. The paragraph in the contract dealing with this right, so far as here pertinent, read:

"B. This policy may be canceled at any time by either of the parties upon written notice to the other party stating when, not less than ten days thereafter, cancellation shall be effective. The effective date of such cancellation shall then be the end of the policy period. . . . If such cancellation is at the [insurance] company's request, the earned premium shall be adjusted pro rata as provided in condition A. . . . Notice of cancellation shall be served upon this employer as the law requires, but, if no different requirement, notice mailed to the address of this employer herein given shall be a sufficient notice, and the check of the company, similarly mailed, a sufficient tender of any unearned premium."

Condition A, in part, provided:

"The premium is based upon the entire remuneration earned, during the policy period, by all employees of this employer engaged in the business operations described in said declarations, together with all operations necessary, incident or appurtenant thereto, or connected therewith. . . . At the end of the policy period the actual amount of the remuneration earned by employees during such period shall be exhibited [by the employer] to the company, as provided in condition C hereof, and the earned premium adjusted in accordance therewith at the rates and under the conditions herein specified. If the earned premium, thus computed, is greater than the advance premium paid, this employer shall immediately pay the additional amount to the company; if less, the company shall return to this employer the unearned portion, but in any event the company shall retain the minimum premium stated in said declarations."

Condition C read:

"The [insurance] company shall be permitted, at all reasonable times, during the policy period, to . . . examine this employer's books at any time during the policy period, and any extension thereof, and within one year after its final expiration, so far as they relate to the remuneration by any employees of this employer while this policy was in force."

If other provisions of the policy require attention, they will be noticed as we proceed.

On October 7, 1935, defendant decided to take advantage of its right to cancel the policy. Accordingly, on that date it mailed to plaintiff a notice of cancellation to become effective on October 21, 1935. It is not disputed that plaintiff received this notice not less than ten days prior to the effective date of the policy period fixed in the cancellation notice. On that date, October 21, 1935, the entire advance premium of $27.85 which plaintiff had paid for the policy had not been earned. Consequently, the unearned portion of the premium would have to be ascertained and returned to plaintiff after his pay rolls had been audited as provided by condition C set out above.

On October 29, 1935, one J. M. Markin, an employee of plaintiff, sustained an injury under such circumstances as to render his employer liable under the compensation act. Defendant was notified of Markin's claim for compensation, but declined to have anything to do with it—on the ground that its policy had been effectively canceled *eight days before* the accident occurred.

An award of compensation was allowed in the injured employee's behalf, which, together with pertinent and incidental charges, made a total sum of $2,240.75. Plaintiff paid this amount and then brought this action against this defendant for reimbursement.

The pleadings set out the pertinent facts. There was no material controversy of fact, although the litigants were greatly at odds as to how the policy had gotten back into the hands of the defendant after its ostensible cancellation. We attach no importance to that incident.

Of more significance in the opinion and judgment of the trial court were these facts: The day after Markin's accident an auditor for the insurance company appeared and audited plaintiff's pay rolls, as privileged under condition C. The auditor apparently completed his task on that date, October 30, 1935; and according to his calculation the sum of $11.43 of the advance premium had been earned by the insurance carrier, which left an unearned balance of $16.42 to be returned to plaintiff. That balance, however, was not so remitted until December 7—one month and 7 days after the auditor's computation was made—one month and 16 days after the expiration of the policy period fixed in the notice of cancellation. On December 7 plaintiff received a check for the unearned premium. It was endorsed in plaintiff's name by his cashier, and deposited to plaintiff's credit in a local bank.

The cause was tried before a jury which was given an instruction which called attention to condition A of the policy, and continued thus:

". . . If you find and believe from the evidence that the defendant did not pay to the plaintiff the adjusted pro rata earned premium until December 6, 1935, then, under the laws of this state and the provisions of said policy, such cancellation did not become effective until the payment of said pro rated premium, and if said J. M. Markin was injured prior to December 6, 1935, to wit, on or about October 29, 1935, then you are instructed that said cancellation was not effective, and did not relieve the defendant from liability under the terms of said policy."

Of course, this instruction, whether correct or not, was equivalent to a directed verdict, and a verdict for plaintiff followed. Judgment was entered accordingly, and defendant appeals, with the usual specifications of error. These, however, may be reduced to one controlling question—the correctness of the rule of law stated in the trial court's instruction set out above.

"Under the laws of this state and the provisions of said policy, such cancellation did not become effective until the payment of said pro rated premium," said the court's instruction. What laws? What provisions?

Defendant's contention, in short, is that neither exists, so we must

turn to plaintiff's brief for light on the subject. His counsel cite the provisions of the policy, conditions A and C, and section B. None of these states *in haec verba* that the unearned portion of an advance premium must be returned at or prior to the date the policy is canceled to make that notice effective. The provision for the return of the unearned premium is exactly on the same basis as prescribed for the payment of any additional premium which might have been earned at the date of cancellation. It would hardly be contended that if the premium paid in advance had been insufficient to equal the amount of the premium earned until the date of cancellation, the insured could keep the policy alive and in force by merely refraining from paying the insurer the actual balance of earned premium due.

Counsel for plaintiff direct our attention to certain language in the policy which declares that the law of the state where the policy applies is made a part of the policy, and that cancellation of the policy shall not be effective except in compliance with such law. Quite true. That rule of law would prevail if the policy had said nothing about it. (*Greer et al. v. M'Carter*, 5 Kan. 17, 22; 13 C. J. 253.) But what particular statutory rule of law do we have which should be read into the policy under present scrutiny? Counsel for plaintiff cite Laws 1927, chapter 232, which, supplemented and amended by later enactments, constitutes the workmen's compensation act (G. S. 1935, 44-501 *et seq.*). But no specific part of that statute is quoted which covers the precise point at issue. Plaintiff also quotes textbook law touching rescission and cancellation, which states the general rule that an essential prerequisite to an effective cancellation of an ordinary insurance contract is a return of the unearned proportion of the premium which the insured had previously paid. Undoubtedly such is the general rule, and it has been applied by this court in *Manlove v. Insurance Co.*, 47 Kan. 309, 27 Pac. 979. To the same effect was *Grant Lumber Co. v. North River Ins. Co.*, 253 Fed. 83, 87, and citations. The authorities pro and con as to the necessity of returning the unearned portion of an insurance premium to effect a cancellation of an insurance policy are collated in *Canal Savings & Homestead Ass'n v. Harmonia Ins. Co.* (La. App.), 181 So. 590.

But in the cases just cited the policy contract pertained to fire insurance, the exact rate and premium of which were not only determinable but determined when the policy was issued, and no audit-

·ing of the insured's accounts was required to ascertain how much of that advance premium had been earned, or to determine if some additional premium had been earned which the insured had not paid at the end of the policy period fixed in the date of cancellation. The same certainty would exist from first to last in old-line life insurance, and perhaps in other lines of insurance.

Quite different is a policy of liability insurance giving an employer coverage on an uncertain and varying number of workmen, and where by reason of the different kinds of labor in which such workmen are engaged the hazards of their employment cause a variance in the rates of insurance. In this kind of insurance the amount of premium earned, the balance, if any, due, the amount unearned and therefore returnable, must all await an auditing of the employer's pay rolls which of necessity must follow the end of the policy period.

The supreme courts of North Carolina and Oklahoma have had to consider this precise question. The case of *Hughes v. Lewis*, 203 N. C. 775, 166 S. E. 909, was quite analogous to the one before us. Lewis was a contractor engaged in logging and lumbering operations. He had obtained a workmen's compensation insurance policy covering his employees. Its terms were similar, perhaps identical, with the one we are considering. It was dated on March 12, 1930, and canceled on September 30, 1930. The initial premium was $400. At the date of cancellation $261 of that sum had not been earned. Some time after the cancellation date, an insurance broker, on behalf of the insurance carrier, returned to Lewis $25, which was only a part of the unearned premium. On November 7, 1930, Hughes, an employee of Lewis, sustained fatal injuries in his master's service. Following an award by the compensation commission the matter was taken into the superior court, which gave judgment sustaining the award, and from that judgment the insurance carrier appealed. The supreme court reversed that judgment. In its opinion the court quoted excerpts from the policy identical with those quoted above in this opinion, and continued:

"The plaintiffs assert that by virtue of these provisions payment or tender to the employer of the unearned premium was a condition precedent to the cancellation of the policy, and it may be conceded that the principle is frequently enforced in determining the liability of insurance companies on certain classes of policies. (5 Cooley's Brief on Insurance, 4669; 3 Couch's Cyclopedia of Insurance, 2347, sec. 707.) In a life or fire insurance policy, for example, the amount of unearned premium is fixed or may be ascertained

at the time of cancellation and remitted to the insured with the notice. It is otherwise in the standard workmen's compensation policy. Under its provisions the insurance carrier has the privilege of calling for an audit of the pay roll as prerequisite to the calculation of the amount due the insured as unearned premium, the return of which is not a condition precedent to the cancellation of the policy. The employer admitted that the policy in question had been canceled prior to the occurrence of the injury resulting in the death of the plaintiff's intestate and that he had received notice of the cancellation. . . .

"The award of the superior court against the American Casualty Company is reversed, and as modified the judgment is affirmed." (pp. 778-779.)

In *Farmers Gin Co. v. United States F. & G. Co.*, 176 Okla. 131, 55 P. 2d 989, the action was to enforce an award of compensation in behalf of an injured workman who was one of a group of plaintiff's employees. Compensation was awarded to the workman, and the employer sued to recover the amount of the award on an industrial accident policy which defendant had issued to plaintiff but which it had canceled several months before the accident to plaintiff's workman occurred. The unearned portion of the insurance premium had not been remitted. This omission was relied on by plaintiff to hold the insurance carrier. The court ruled otherwise, using the same reasoning as that of the North Carolina supreme court in *Hughes v. Lewis*, supra. The pertinent paragraph of the syllabus reads:

"Under the provisions of a standard workmen's compensation policy, provided by the workmen's compensation law, the insurance carrier, upon the cancellation of said policy, has the privilege of calling for an audit of the pay roll as a prerequisite to the calculation of the payment due on the unearned premium, the return of which is not a condition precedent to the cancellation of said policy." (Syl. ¶ 2.)

This court holds that the provision for the cancellation of the policy could not be fairly interpreted to require the auditing of plaintiff's pay roll and the ascertainment of the exact amount of the unearned premium and its return at or prior to the end of the policy period in order to effectuate the cancellation of the policy.

The judgment is therefore reversed, and the cause remanded with instructions to enter judgment for defendant.