120 So.2d 90 (1960)
Joseph POIRRIER et al.
v.
AUDUBON INSURANCE CO. et al.
No. 4961.
Court of Appeal of Louisiana, First Circuit.
April 25, 1960.
Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for Jos. Poirrier, plaintiff-appellant.
Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for Mrs. Gladys Poirrier, plaintiff-appellant-appellee.
Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, for Alfred LeBlanc Jr. & Audubon Ins. Co., defendants-appellants.
*91 Seale, Hayes, Smith & Keogh, Baton Rouge, for Chas. Sotile & Am. Cas. Co., defendants-appellants.
Taylor, Porter, Brooks, Fuller & Phillips, Robt. Vandaworker, Baton Rouge, for Southern Farm Bureau Cas. Ins. Co., defendant-appellee.
Before ELLIS, LOTTINGER, TATE and FRUGE, JJ.
LOTTINGER, Judge.
This litigation consists of eight different suits which were consolidated for trial purposes. The said suits are for damages in tort which arise out of an automobile accident involving three automobiles. The accident occurred on Louisiana Highway No. 1, approximately two miles north of the Town of Addis, in West Baton Rouge Parish, at approximately 1:30 A.M. on the morning of June 30, 1959. The accident concerned a 1928 model A Ford owned and operated by Bryant Y. Dowden, Jr., hereafter referred to as the "Dowden car", a 1956 Chevrolet sedan owned and operated by Alfred LeBlanc, Jr., hereafter referred to as the "LeBlanc car", and a 1956 Oldsmobile two-door sedan owned and operated by Charles M. Sotile, hereafter referred to as the "Sotile car".
Although the manner in which the accident occurred is not in serious dispute among the numerous parties to these suits, there is considerable disagreement among the litigants regarding certain details incident to the accident which might show negligence on the part of various parties involved. The parties concede that the accident occurred (as a rear end collision) when the northbound LeBlanc car struck the right rear end of the Dowden car, causing the Dowden car to veer from its right hand lane into its left hand lane and to collide with the on-coming Sotile car, which was traveling in a southerly direction, in its proper lane, along Louisiana Highway No. 1. The parties to this suit are the drivers and owners of the respective vehicles, their guest passengers, and their respective liability insurance carriers. Charges of negligence and/or contributory negligence are made by practically all defendants against the plaintiffs, and, in most instances all plaintiffs are cast as defendants in other suits. The insurance companies involved all plead the limits of their respective policies, and request that the Court pro rate the awards of all successful litigants as against the companies, as it appears that the quantum involved in the several suits will exceed the limits of liability of the insurers involved.
The accident in question resulted in nine different suits, all of which were consolidated for trial, and eight of which are before this Court on appeal. In an attempt to simplify a very involved situation, we will consider all suits in this opinion, however separate judgments will be handed down in each of the respective suits before us.
Before delving too deeply into the matter, we should say that the Audubon Insurance Company was the liability insurer of the LeBlanc car, the American Casualty Company was the liability insurer of the Sotile car, and Southern Farm Bureau Casualty Insurance Company was the liability insurer of the Dowden car.
In the suit entitled Joseph Poirrier and his wife, Mrs. Gladys Robert Poirrier, versus Audubon Insurance Company, et al., the petitioners, who were guest passengers in the Sotile automobile, seek recovery from defendants Alfred LeBlanc, Jr., Audubon Insurance Company, Charles M. Sotile, American Casualty Company, and Southern Farm Bureau Casualty Insurance Company, individually and in solido, in the sum of $129,452.37 for Mr. Poirrier and the sum of $30,000 for Mrs. Poirrier for physical injuries, pain and suffering, medical bills, and loss of wages and personal effects. The petitioners therein allege that defendant LeBlanc was negligent in operating his automobile in excess of the legal speed of 60 m. p. h., that he failed to maintain a proper lookout and to keep his vehicle *92 under proper control, and that he negligently caused his automobile to collide with the rear end of the preceding Dowden car. They charge defendant Dowden with negligence in operating his vehicle with a defective tail light or no tail light at all, and operating his car in a careless and reckless manner. Defendants LeBlanc and Audubon answered the suit denying that LeBlanc was negligent in any respect and alleged that the sole proximate cause of the accident was the negligence of Dowden in operating his car at night without lights as well as the concurrent negligence of Sotile who was driving at an excessive rate of speed, in a reckless manner, and failed to have his vehicle under control so as to avoid an impending accident. Alternatively LeBlanc and Audubon plead contributory negligence on the part of Mr. & Mrs. Poirrier which is alleged to be their acquiescence in the reputed negligence of their host driver, Sotile, and their own failure to maintain a proper lookout for their own safety and welfare. As an additional alternative, LeBlanc and Audubon plead that the negligence of Sotile is chargeable to the Poirriers in that Sotile is said to have been acting as the agent of the Poirriers at the time of the accident. Finally Audubon pleads the limits of its policy restricting its liability to the sum of $5,000 to any one individual, $10,000 for any accident, and $5,000 maximum for property damages.
Sotile and American Casualty filed answer in the Poirrier suit denying any negligence on the part of Sotile in contending that he was faced with a sudden emergency when the on-coming LeBlanc car collided with the rear of the Dowden car thereby projecting the Dowden car into the path of the Sotile car which was traveling in its proper lane. Alternatively, Sotile and American plead contributory negligence on the part of the Poirriers, who were guest passengers in the Sotile car, which alleged negligence consists of their failure to warn Sotile that he was not keeping a proper lookout, that his vehicle was not under proper control, failing to warn him that he had not dimmed his headlights, failing to warn Sotile to stop when they saw an accident was impending, and riding with Sotile without protest when they saw or should have seen the danger attendant upon the negligent manner in which Sotile was driving his car.
Southern Farm Bureau defends the Poirrier action on the ground that Dowden was free of negligence and, alternatively, charges Mr. & Mrs. Poirrier with the same alleged acts of contributory negligence which are advanced by Sotile and American Casualty. In the second alternative, Southern Farm contends Sotile was the agent, servant or employee of Mr. & Mrs. Poirrier and, as such, the alleged negligence of Sotile is attributable to them and bars their recovery herein. In the final alternative, Southern Farm urges the limits of its policy which are the same as that of Audubon.
In the suit entitled Charlie Freeman and his wife versus Audubon Insurance Company, La.App., 120 So.2d 105, the petitioners seek judgment in the sum of $70,500 each against LeBlanc, Audubon, Sotile, American and Southern Farm, in solido, for the death of their 22 year old son Millard Freeman who was killed in the accident while riding as a guest passenger in the Dowden car. The negligence lodged against the defendants is virtually the same as contended in the Poirrier suit. LeBlanc and Audubon answered, denying LeBlanc was guilty of any negligence whatsoever and alleged that the accident was caused by the joint and concurrent negligence of Dowden and Sotile, and, in the alternative, charged that the deceased was contributorily negligent in riding in the Dowden car at night without lights and consenting to the negligent manner in which the car was being operated. They also claim that Dowden was the agent of or servant of decedent. Sotile and American defend the Freeman action on the ground of sudden emergency and freedom of negligence on the part of Sotile. They also claim contributory negligence on *93 the part of the deceased. Southern Farm Bureau resists the Freeman suit on the ground that its assured, Dowden, was free of negligence, and claimed that the decedent was contributorily negligent for the same reasons urged by the other defendants. It also pleads the limits of its insurance coverage in the amount of $5,000, $10,000 and $5,000.
In the suit entitled Charles M. Sotile versus Albert LeBlanc, La.App., 120 So.2d 108, petitioner seeks recovery from LeBlanc, Audubon, Bryant Y. Dowden, Sr. (father of the now emancipated Bryant Y. Dowden, Jr.) and Southern Farm, in solido, in the sum of $47,649. This petitioner claims that he was free of negligence and that the sole cause of the accident was the concurrent negligence of LeBlanc and Dowden as hereinabove set forth in the other suits. LeBlanc and Audubon answered the Sotile suit denying any negligence on the part of LeBlanc, and contend that the sole cause of the accident was the driving of the Dowden car on the highway without any tail light, and, furthermore, that LeBlanc's visibility was impaired by the lights of an on-coming car. They further charge Sotile with contributory negligence.
Defendants Dowden and Southern Farm answered the Sotile suit denying that young Dowden was negligent and claiming that the other parties, including Sotile, were guilty of such negligence as to be the cause of the accident.
In the suit entitled Lane Dugas, Jr. versus Alfred LeBlanc, Jr., La.App., 120 So.2d 111, the petitioner seeks to recover the sum of $21,390.75, in solido, from LeBlanc, Audubon, Dowden, Sr. and Southern Farm. He claims such amount for personal injuries received while riding as a guest passenger in the Sotile vehicle. He claims that the accident resulted from the negligence of LeBlanc and Dowden, Jr., his claims being essentially the same as those set forth in the other suits. The defenses offered by the defendants in this suit are substantially similar to those set forth in the other suits. Furthermore, the defendants LeBlanc and Audubon filed third party petitions bringing in Sotile and American. Exceptions were filed to the said third party petitions, which were referred to the merits, and the third party defendants then filed answer.
In the suit entitled Anthony Montalbano versus Alfred LeBlanc, Jr., La.App., 120 So.2d 110, Anthony Montalbano seeks to recover for himself individually the sum of $832, and, for the use and benefit of his minor daughter, Frankie, who was a guest in the Sotile vehicle, the sum of $25,050, representing medical expenses and personal injuries incurred in the accident. The defendants are LeBlanc, Audubon, Bryant Y. Dowden, Sr., and Southern Farm, against whom similar actions of negligence are leveled against the defendants. Similar defenses were set forth by defendants. In this suit, third party petitions were filed by LeBlanc and Audubon against Sotile and American, to which there were exceptions and then an answer filed as in the Dugas case.
In the suit entitled Bryant Y. Dowden, Jr. versus Audubon Insurance Company, La.App., 120 So.2d 106, petitioner, an emancipated minor, seeks judgment against LeBlanc, Audubon, Sotile, American and the Gulf Union Casualty Company, which is alleged to have been the insurer of the LeBlanc automobile, in solido, for the sum of $95,275.50. Dowden contends that both Audubon and Gulf were liability insurers of the LeBlanc automobile, and that the accident was due solely to the concurrent negligence of LeBlanc and Sotile. The answers of all defendants were similar to those above mentioned, except that, by supplemental answer, Gulf set up the defense that its policy on the LeBlanc automobile had expired on June 9, 1957, which was some days prior to the date of the accident. An objection to the said supplemental answer was entered by petitioner based upon its contention that in its original answer, Gulf had admitted that its policy was in force on the date of the accident.
*94 In the suit entitled Henry J. Rodriguez versus Alfred LeBlanc, Jr. (Audubon Insurance Company), La.App., 120 So.2d 103, petitioner seeks the sum of $15,284.75 for himself, and for and on behalf of his minor daughter, Delores. The defendants named are LeBlanc, Audubon, Sotile, American and Southern Farm. While this action was pending, Miss Rodriguez was emancipated by marriage, and proper pleadings have been filed so as to substitute her as the sole plaintiff. The allegations of negligence, as well as the answer thereto and the charges of contributory negligence are similar to those mentioned above, except that Southern Farm adds the new defense that the negligence of LeBlanc is imputable to petitioner because of the fact that they were on a joint venture.
In the suit entitled Melba Theriot v. Audubon Insurance Company, La.App., 120 So.2d 102, petitioner, an emancipated minor, seeks recovery in the sum of $15,293.56 from LeBlanc, Audubon, Sotile, American and Southern Farm, in solido, for personal injuries sustained in the collision. She charges all three drivers with concurrent negligence, and the defenses are the same as those presented in the other cases.
One additional suit, with which we are not concerned, was filed by American Casualty Company versus LeBlanc, et al., under which American sought recovery of damages paid under an act of subrogation of its assured, Sotile. This suit, because of jurisdiction, was appealed directly to the Louisiana Supreme Court.
Upon trial of the merits, the Lower Court held both Alfred LeBlanc, Jr. and Charles M. Sotile concurrently negligent for the accident, and judgments were rendered against them and their insurers, Audubon Insurance Company and American Casualty Company, in all suits except those filed by Sotile himself, and Lane Dugas, Jr. and Mr. Poirrier. As to the suits filed by Dugas and Mr. Poirrier, the Lower Court held these petitioners guilty of negligence by virtue of their relationship as guest passengers in the Sotile car and, in these two suits, judgment was rendered in favor of the defendants and the suits were dismissed. All of these parties have appealed, or answered the appeal, and the eight suits are now before us.
The record and the evidence discloses that, at the time of the accident, young Dowden (then an unemancipated minor) was driving his 1928 model A Ford in a northerly direction along Louisiana Highway No. 1, which is a two-laned paved highway twenty (20') feet in width, with dirt shoulders of approximately six to eight feet in width on either side, said highway running generally northerly and southerly. Young Dowden was in his right hand lane of the highway and was traveling at a speed of approximately 20 to 25 miles per hour; he was accompanied by Millard Freeman, his guest passenger, who was seated on the front right of the Dowden car. Following and overtaking the Dowden car was the LeBlanc car owned and operated by Alfred LeBlanc, which was also being driven in a northerly direction along highway one in its right hand lane. Accompanying LeBlanc were his guests: Melba Theriot, seated in the middle of the front seat, Delores Rodriguez, seated on the right side of the front seat, Rosemary Blanchard, seated on the extreme right of the rear seat, Gail Comeaux, seated on the middle right of the rear seat, Jack Hebert, seated on the middle left of the rear seat, and Raymond LeBlanc, seated on the extreme left of the rear seat. The LeBlanc automobile was traveling at a speed of at least 60 m. p. h. and was rapidly overtaking the slowly moving Dowden car. Approaching these two northbound vehicles was the Sotile car which was being driven in a southerly direction, in its proper lane of traffic at a speed of between 45 and 60 m. p. h. The Sotile vehicle was driven by Charles M. Sotile, its owner, and his guests were: Joseph M. Poirrier, seated on the right front seat, Mrs. Poirrier, seated on the left of the rear seat, Lane Dugas, Jr., seated on the right side of the rear seat, and Miss Frankie Montalbano, seated in the middle of the rear seat.
*95 At the point of the accident, the roadway is straight and level, although there is a curve in the highway at a distance of approximately one-half mile south of the scene of the accident. On the night in question, the weather was clear, the roadway was dry and the visibility was good except for the normal darkness. The accident occurred at approximately 1:30 A.M. on June 30, 1957.
Alfred LeBlanc, Jr. testified that he was proceeding northerly along said highway at a speed of some 60 to 65 m. p. h. with his lights on dim when he suddenly observed the "unlighted" Dowden car at a distance of approximately 70 to 150 feet ahead of him in his lane of traffic, the northbound lane. He immediately applied his brakes and attempted to pass the Dowden car on its right but, in doing so, the left front of his automobile struck the right rear of the Dowden car, causing him to lose control of his car which then passed the Dowden car to its right, veered across the highway, and traveled an additional distance of approximately 400 feet and ultimately came to rest upon a railroad embankment situated on the opposite, or west side of the highway and which runs parallel thereto. LeBlanc testified that he did not observe any lights whatsoever on the Dowden car, that he became conscious of its presence upon the highway when he saw the reflection of his own headlights in the rearview mirror of the Dowden car. Although LeBlanc alleged in his answer that he was also blinded by the lights of an approaching car, his testimony is to the effect that he does not recall being blinded thereby. However, he did testify that there must have been an approaching vehicle, otherwise he would not have elected to attempt to pass the Dowden car to its right.
Miss Melba Theriot, who was seated on the middle front seat of the LeBlanc automobile, testified that she was engaged in a conversation with Delores Rodriguez, who was seated to her right, when she observed the outline of the Dowden car at a distance of some 25 to 30 feet. Miss Theriot did not see any tail lights on the Dowden car and was unable to say whether it was stationary or in motion. Miss Delores Rodriguez testified substantially similar to that of Miss Theriot and claims that someone made a remark about "no lights". She glanced forward and noticed the silhouette of the Dowden vehicle and noticed no lights on it. She did not know how fast LeBlanc was traveling at the time, however she did not consider his speed excessive. Although she remembers LeBlanc attempting to pass the Dowden car to its right, she does not recall whether or not he applied his brakes.
Raymond LeBlanc stated that he was seated on the rear seat of the LeBlanc automobile and heard someone shout "Look out". He immediately looked forward, observed the unlighted form of the Dowden car, and realizing the imminent collision, dropped to the floor of the car as a protective measure. He did not observe any oncoming traffic and testified that LeBlanc applied his brakes.
Jack Hebert testified that he was asleep on the rear seat of the LeBlanc automobile and, upon hearing someone shout, immediately fell to the floor of the car. He did not see the Dowden car and does not know of any of the circumstances surrounding the accident.
Miss Rosemary Blanchard testified that she was seated on the rear seat of the LeBlanc automobile and, upon looking forward and noticing the Dowden car, she shouted, "Alfred, a car". She did not know the distance of the car or whether it was equipped with a tail light. Miss Gail Comeaux, the remaining occupant of the LeBlanc car, testified that she was alerted by a warning cry and, upon looking forward, caught a momentary glimpse of the Dowden car on the road ahead just before the impact. She did not observe the approaching Sotile vehicle and could not state whether or not there were lights on the rear of the Dowden car.
Bryant Y. Dowden, Jr. testified that he and his friend, Millard Freeman, had also *96 visited the Cassino Club on the night of the accident in question. The occupants of the LeBlanc car had also been to the said club. Young Dowden testified that he departed from the club at about 1:30 A.M. and that, although he had drunk several "cokes", he had consumed no alcoholic beverages whatsoever as he is an abstainer. He was driving his Model A Ford, which is painted a dark green in color with a one and one-half inch horizontal yellow stripe circling the approximate center of its body, in a northerly direction on the highway in the east or northbound lane at a speed of between 20 or 25 m. p. h. He observed the lights of the overtaking LeBlanc automobile flash into his rearview mirror and was immediately struck from behind. He did not notice the approaching Sotile car and had no knowledge of his car being struck by the Sotile car. Millard Freeman, the guest passenger in the Dowden car, was instantly killed in the accident.
Charles M. Sotile, driver of the southbound Oldsmobile, testified that he and his guests, who were amateur entertainers, had been to Lafayette, Louisiana where they had staged a floor show for the members of a local club. Lane Dugas, Jr., who was in the Sotile automobile, had escorted Miss Montalbano. They left Lafayette at about 11:55 P.M. and proceeded towards Donaldsonville at a speed of approximately 60 m. p. h. Prior to reaching Port Allen, Sotile requested information from Dugas relative to a short cut through Port Allen, which was situated about eight miles north of the scene of the accident. Sotile has no further recollection of the evidence which transpired due to his alleged amnesia which he claims was induced by the injuries received by him due to the accident.
Joseph M. Poirrier testified that he was seated on the front seat of the Sotile vehicle and that they were traveling approximately 50 m. p. h. at the time of the accident. He testified that Sotile had previously been driving about 60 m. p. h. but, after passing through Port Allen, he requested Sotile to reduce his speed as they were nearing their destination. The speed was reduced, in accordance with Poirrier's request, and, at the time of the accident, the speed was not excessive nor reckless. Poirrier was unable to tell exactly how the accident happened, although at all times Sotile was driving on his proper side of the road. Shortly before the accident, Poirrier noticed two on-coming vehicles, the nearest being approximately 250 feet away and the other approximately one-half mile away traveling at what he estimated to be a high rate of speed. Shortly thereafter, he again looked up and noticed the nearest vehicle at a distance of 40 to 50 feet at which time he did not see the second vehicle, nor does he know exactly what transpired immediately thereafter.
Lane Dugas, Jr., who was seated on the right side of the rear seat in the Sotile car, testified that he noted the approach of the two vehicles, the nearest of which he judged to be an old model car because of its dim and vibrating headlights. At the time he first observed the vehicles, the first one was some two to five hundred feet away, and the second was rounding the curve situated south of the scene of the accident and proceeding northerly at a speed which he estimated to be at least 70 m. p. h. The testimony indicates that this curve was approximately one-fourth to one-half mile south of the point of impact. Of the occupants of the vehicles involved in the accident, Dugas was the most definite as to his interpretation of exactly how the accident occurred. He testified that the LeBlanc car struck the Dowden car on its right rear knocking it into the southbound lane of traffic and causing it to collide with the Sotile vehicle which was in the southbound lane. He estimates that the impact between the LeBlanc and Dowden car occurred when the Sotile vehicle was approximately twenty feet away. His testimony contains certain conflicting statements regarding the manner in which the Dowden car was being overtaken by LeBlanc. At one stage he stated that he was not particularly concerned and did not *97 feel that an accident was imminent. On cross-examination, however, he admitted giving a statement to an insurance adjustor in which he averred that a collision seemed almost certain, as he was wondering how LeBlanc would manage to stop his car to avoid striking the Dowden car. However, he failed to warn Sotile of the danger.
The other occupants of the Sotile vehicle were asleep on the rear seat, and knew nothing whatsoever of the facts surrounding the accident.
The accident was investigated by three members of the Louisiana State Police. Their testimony is to the effect that the Model A Ford was completely demolished by the force of the two impacts and the remains thereof were strewn over the highway. The largest portions of the remains being found on the center of the highway on the southbound traffic lane. Their testimony reflects that the Oldsmobile (Sotile) stopped in its proper lane and the LeBlanc car traveled a distance of approximately 350 to 400 feet north of the point of impact with the Dowden car and came to rest on the railroad embankment lying to the west of the highway.
The only eyewitness to the accident, other than the occupants of the vehicles involved, was Harold LaHaye who testified that he left the Cassino Club immediately after LeBlanc, and followed him at a distance of some two to three hundred feet in the rear. He estimated LeBlanc's speed to be between 60 and 65 m. p. h. and stated that he suddenly noticed the brake light of the LeBlanc automobile flash on after which the car traveled an additional 60 to 70 feet before it struck the rear of the Dowden car. He had not noticed the location of the Sotile vehicle, however, he did apply his brakes and stopped his car a short distance north of the point of collision after maneuvering in such a manner as to avoid being involved in the accident. After bringing his car to a stop, he noted for the first time that the Sotile vehicle had also been involved in the accident.
As to the numerous allegations of contributory negligence on the part of young Dowden, the respective defendants only seriously urged two counts of contributory negligence. They alleged that the Dowden car was stopped on the highway at night without any lights, and, in the alternative that the Dowden vehicle was proceeding with either no tail lights at all, or defective tail lights. The evidence, however, shows that the Ford was proceeding along the highway at the time it was struck.
LSA-Revised Statutes of 1952, Title 32, Section 293 requires that all vehicles upon a public highway at night time be equipped with the tail light visible for a distance of 500 feet. The evidence shows that the Ford, although of an old model, was equipped with a tail light. This is shown by a picture of the wrecked Ford which is filed in the record. The question, therefore, is whether the tail light was working at the time immediately before the accident and, if so, to what extend.
Herman McLearnen, an automobile mechanic, testified that he rearranged the lighting wires on the Ford during the month of January, 1954. He testified that he so arranged the lighting system so that, in the case of any defect, all of the lights of the Ford would fail to burn. There is no question but that the headlamps were lighted prior to the accident. McLearnen further testified, however, that the only manner in which one light could fail to burn and the others would remain lighted would be from a defective bulb. Young Dowden testified that, before leaving the Cassino Club, that he checked the tires on his Ford car because they were old and he wanted to be certain that they were properly inflated before he got on the highway. In the course of inspecting the tires, he observed that the tail light was burning just a short time before the accident, from which he concluded that it was still burning at the time of the accident.
*98 John W. Tillery and his wife, who were acquaintances of young Dowden, both testified that at approximately 7:30 P.M. on the night of the accident, they crossed the Mississippi River ferry at the same time that young Dowden was crossing in his Ford automobile. They stated that there was one car between their vehicle and the Dowden car and, as Dowden ascended the ramp leaving the ferry, they noticed that the tail light on his Ford was in operation. They testified that although it was not as bright as it would be on a newer model automobile, it was clearly visible.
Lt. Poccorello, of the Louisiana State Police, testified that he had arrested Dowden on the night preceding the accident for operating his automobile with an improper license plate, namely a 1955 license. On this occasion, he noticed that the Ford was equipped with a tail light which was operating properly, otherwise he would have issued Dowden an additional ticket for operating his car with an improper tail light.
The foregoing testimony indicates that the tail light on the Model A Ford was definitely operating properly a short time prior to the accident, although none of them could testify as to whether or not it was in operation at the moment of the accident. The only contradictory testimony relative to the tail light on the Dowden car is the testimony of Alfred LeBlanc, Jr. and four of his guest passengers, all of whom testified that they did not observe a tail light burning on the Ford. They all admitted, however, that they only got a momentary glimpse of the Dowden car prior to the impact, and, of course, it is possible that they got such a short glimpse of the Ford as to not particularly notice the tail light even if it was burning.
In view of the foregoing, the Lower Court held that the preponderance of the evidence was to the effect that the light on the rear of the Dowden car was burning properly at the time of the accident. In its opinion, the Lower Court specifically mentions that Dugas, who was riding in the Sotile vehicle, testified that he saw the headlamps on the Ford burning which testimony, when coupled with that of the auto mechanic, did lead to the conclusion that the tail light was also burning unless there was a defective bulb in the tail light. We feel that the conclusions of the Lower Court on this vital point is correct, and that the evidence preponderates to the effect that young Dowden was not driving on the highway with either a defective tail light or no tail light at all. It is, therefore, the opinion of this Court that young Dowden was guilty of no negligence which had any causal connection with the accident.
The main charges of negligence against Sotile are his alleged driving at an excessive rate of speed, failure to have his automobile under proper control, and failure to maintain a proper lookout and to take such evasive action as to avoid what he should have known to be an imminent collision. Much is made of the fact that Sotile must have been proceeding at a high rate of speed to cover the distance from Lafayette to the scene of the accident in the period of one hour and twenty-five minutes. Of course, the question to be decided as to his negligence or lack thereof concerns the speed at the time of the accident. He might well have been traveling at a very excessive rate of speed some time before the accident and have slowed his speed within reasonable and proper limits at the time of the accident. The Lower Court held that Sotile was driving at a speed of no more then 60 m. p. h. which, considering the conditions existing at the time, was reasonable. Although Sotile could not give the Court any definite information as to his speed at the time, he testified that he did not think he was going over 60 m. p. h. because such is his normal maximum rate. Mr. Poirrier, who was seated on the front seat of the Sotile vehicle estimated Sotile's speed at between 45 and 50, because he had reduced his speed shortly before the accident at the request of Mr. Poirrier. Based upon this evidence, the Lower Court found that the *99 speed of the Sotile vehicle at the time of the accident was between 45 and 55 m. p. h., and such finding is based upon the greater weight of the evidence. Poirrier testified that shortly before the accident, he looked ahead and saw two approaching vehicles, one approximately 250 feet distance and being overtaken by another vehicle which he estimated to be approximately one-half mile away. He observed nothing unusual in the movement of either vehicle and did not consider that there was danger of an accident. A few seconds later, he again looked up and saw the nearest vehicle approximately 40 to 50 feet away, but recalls nothing else. None of the occupants of either the Dowden or LeBlanc vehicles gave any information relative to the position of the Sotile car immediately prior to the accident, or at the time of the impact between the LeBlanc and Dowden vehicles. Lane Dugas, Jr., who was seated on the rear seat of the Sotile car testified that he suddenly looked up and saw what appeared to be an old model car approaching at a slow speed and at a distance at which he estimated to be between 600 to 750 feet. His assumption that it was an old model car was based upon his testimony that the headlamps were dim and were vibrating. Behind the old vehicle, he noticed another vehicle rounding a curve at a distance of approximately one-half mile beyond the old vehicle, and estimated the speed of this second vehicle at approximately 70 m. p. h. He testified that the point of impact between the LeBlanc and Dowden cars occurred at a distance of approximately 20 feet from the Sotile car. This, of course, indicates that the two collisions were almost simultaneous, as the Dowden car was thrown across the highway into the path of the Sotile car. Based upon the testimony of Mr. Dugas, the Lower Court held Sotile to be guilty of negligence which was a proximate cause of the accident. On direct examination Dugas testified that it did not appear to him that an accident was imminent. On cross-examination, however, he testified that he gave an insurance adjustor a written statement in which he related that he did not see how the LeBlanc car could avoid running into the preceding and slower moving Dowden car. Despite this latter statement, however, he did not warn Sotile of any danger. It is our opinion that the Lower Court erred in holding Sotile guilty of negligence. Considering that these vehicles were proceeding at night time, and that these vehicles were several hundred feet away, it is extremely doubtful that Dugas could have been so exact as to the relative speeds of these vehicles. He further contradicted himself in that at one stage he testified that an accident was apparent, whereas, at another stage he testified that he did not believe an accident would occur. In view of the evidence of Poirrier, we feel that the Lower Court erred in holding Sotile negligent, and the decision of the Lower Court will be reversed in this respect. The negligence held against the occupants of the Sotile vehicle, Dugas and Poirrier, will necessarily fall, and they should be entitled to recover.
We must remember that this accident occurred at night time during darkness. It seems extremely doubtful to us that the conditions of the two approaching vehicles were of such nature as to place Sotile upon his guard that a collision was impending. He was faced only with the headlamps of these two vehicles, and feel that he was not negligent in relying on the assumption that both of the on-coming drivers had their vehicles under proper control. As to the guests in the Sotile car, they were under less duty than was Sotile himself, and the facts indicate to this Court that none of the occupants of the Sotile vehicle can be charged with contributory negligence in this accident. The Lower Court, held LeBlanc to be negligent, however it freed its guests of any contributory negligence. The record shows without any doubt that LeBlanc was proceeding at an excessive rate of speed. The evidence tends to indicate that his speed was somewhere between 60 to 70 m. p. h., which, of course, is above the legal speed limit set by law. This speed however, we believe was not of such an *100 excessive rate as to place his guests in a position so as to require them to protest in order to avoid being guilty of independent contributory negligence. Some of his guests were asleep, which indicates that they evidently thought that he was driving in a proper manner and at a proper rate of speed. Both Miss Theriot and Miss Rodriguez, who were awake testified that they were not concerned with the manner in which LeBlanc was driving, and that his maneuvers seemed proper to them. We, therefore, feel that the Lower Court was correct in holding the guests in the LeBlanc vehicle free of contributory negligence.
As to the negligence of LeBlanc himself, the record definitely establishes that he was solely responsible for the accident for traveling at night on a highway at an excessive rate of speed as well as failure to notice the tail light on the Dowden vehicle, which we have already held was lighted at the time of the accident. We feel that had LeBlanc been proceeding at a proper rate of speed and had he been keeping a proper lookout ahead, he would have noticed the Dowden car at such a time as to be able to either reduce his speed or to stop so as to avoid the accident. His negligence in these two scores renders him negligent and liable in damages for any injuries sustained as a result of the accident.
As to the negligence of young Dowden and his guest, Millard Freeman, who unfortunately was killed in the accident, we find them free of any negligence. Young Dowden was apparently driving his car at a reasonable rate of speed along the highway in his proper lane, and the evidence preponderates to the effect that his tail light was on and burning. No act of negligence has been proved against him and, none has been proved against Millard Freeman. The allegation that the Dowden vehicle was stopped on the highway is reputed by the testimony of both Dugas and Poirrier. We, therefore, feel that the Lower Court was correct in holding young Dowden and Freeman free of negligence.
As to quantum due each of the successful petitioners, we will discuss same in the separate judgments rendered in the various suits herein. However, as we found LeBlanc and his insurance carrier, Audubon Insurance Company, liable in negligence, and insofar as Audubon's policy provides for $10,000 maximum liability arising out of one accident, it will be necessary that we apportion the respective judgments insofar as they apply against Audubon Insurance Company. The apportionment will be made in the present opinion, and such apportionment will be referred to in the separate judgments.
In the present suit, the evidence discloses that Mrs. Gladys Robert Poirrier sustained a traumatic head injury, slight brain concussion, lacerations of the forehead, injury to the cervical region, traumatic chest injuries and bruises of the right breast, injury to the manubrium sternum, fracture of the third and fourth ribs on the right side, and injury to her right hand and left knee. She was initially hospitalized for eleven days, and returned for additional hospitalization for a period of seven days, during which she underwent surgery for a removal of a blood clot on her left knee. As a result of her many injuries, she experienced headaches for some time following the accident, was compelled to use crutches for a great period of time, and suffered considerable pain, particularly from her fractured ribs and the injuries to her hand and knee. Her hand is still a source of discomfort and impedes her in the performance of her usual household tasks. Her hospital and medical bills total $917.65, recovery of which is claimed by her husband, Mr. Poirrier. As damages for her injuries, as well as the residual disability resulting therefrom, the Lower Court awarded Mrs. Poirrier a judgment in the amount of $14,000. We feel that said judgment is excessive. We feel that the evidence relative to the injuries sustained by Mrs. Poirrier indicates that the award granted below is excessive, *101 and same will be reduced to the sum of $10,000.
As to Mr. Poirrier, we find that he also suffered very serious and painful injuries. Doctor Rhodes J. Spedale, who treated Mr. Poirrier, testified that on the night of the accident, he did not know whether or not Mr. Poirrier was going to live because of the seriousness of the chest and head injuries received in the accident. After a period of about twenty-four hours, however, Dr. Spedale became convinced that Mr. Poirrier would pull through. Mr. Poirrier suffered a traumatic head injury, brain concussion, lacerations of the nose, of which he still shows evidence, lacerations of the face and lip, possible internal hemorrhage, traumatic chest injury, fracture of the third, fourth, fifth and sixth ribs on the left side, traumatic injury to the cervical and dorsal regions, and fracture of the sixth and seventh ribs on the right side. He also suffered traumatic low back injury with a flattening of the transverse processes of the first, second and third lumbar vertebrae. Mr. Poirrier remained at the hospital a total period of twenty-eight days. He was on crutches for a period of approximately six months and was totally disabled to perform his duties as a carpenter for a period of approximately one year from the date of the accident. He still complained of his back and hip at the time of trial below, however Dr. Spedale testified that he had a good recovery. Doctor D. C. Foti, a dentist, treated Mr. Poirrier for injuries to his mouth. He testified as to the gums being very badly lacerated, and that Mr. Poirrier was wearing plates at the time of the accident. Dr. Foti's bill was in the amount of $750. The other medical and drug expenses total $2,516.64, among which is included the medical bills paid for Mrs. Poirrier's treatment. The record discloses that Mr. Poirrier suffered loss of wages in the amount of $3,000, as well as miscellaneous expenses of $253.29, which included replacement of eye glasses, sun glasses, loss of clothes, etc. We feel that Mr. Poirrier should be compensated $16,500 for his pain, suffering and physical injuries received, plus special damages, as itemized above, in the amount of $6,519.93, making a total award for Mr. Poirrier, in the amount of $23,019.93.
By referring to all the judgments rendered in these suits, we find that the total amount of the awards is in the sum of $99,852.98. As stated above, Audubon Insurance Company has a limit of liability in its policy of $10,000, and we have been requested to apportion the amount of each award insofar as same affects the said insurance company. We find that the judgments rendered in the various suits give a total amount of judgment in favor of Mr. Joseph Poirrier in the amount of $23,019.93, of which the Audubon Insurance Company shall be limited in liability to the principal sum of $2,305.38. Of the $10,000 awarded Mrs. Gladys Poirrier, Audubon Insurance Company should be limited in liability to the principal sum of $1,001.47; of the $7,043.00 awarded Charles M. Sotile, Audubon Insurance Company should be limited in liability to the principal sum of $705.34; of the $865.75 awarded Lane Dugas, Jr., Audubon Insurance Company should be limited in liability to the principal sum of $86.70; of the $12,309 awarded Charlie Freeman, Audubon Insurance Company should be limited in liability to the principal sum of $1,232.71; of the $12,000 awarded Clotte Freeman, Audubon Insurance Company should be limited in liability to the principal sum of $1,201.77; of the $1,775 awarded Miss Frankie Montalbano, Audubon Insurance Company should be limited in liability to the principal sum of $177.76; of the $67 awarded Anthony Montalbano, Audubon Insurance Company should be limited in liability to the principal sum of $6.71; of the $27,467.30 awarded Bryant Y. Dowden, Jr., Audubon Insurance Company should be limited in liability to the principal sum of $2,750.78; of the $1,783.75 awarded Mrs. Delores Rodriguez Johnson, Audubon Insurance Company should be limited in *102 liability to the principal sum of $178.64; and of the $3,522.25 awarded Melba Theriot, Audubon Insurance Company should be limited in liability to the principal sum of $352.74.
There will, therefore, be a judgment herein in favor of Joseph Poirrier and against defendants, Alfred LeBlanc, Jr., and Audubon Insurance Company, jointly and severally, in the amount of $23,019.93, with legal interests thereon from date of judicial demand, until paid, with costs of Court, of which sum the Audubon Insurance Company shall be liable in the principal sum of $2,305.38; and there will be judgment in favor of Mrs. Gladys Poirrier and against defendants, Alfred LeBlanc, Jr. and Audubon Insurance Company, jointly and severally, in the sum of $10,000, with legal interest thereon from date of judicial demand, until paid, with costs of Court, of which sum Audubon Insurance Company is liable in the principal sum of $1,001.47; and, as above amended, the judgment of the Lower Court will be affirmed.
Amended and affirmed.