282 So.2d 807 (1973)
Bruce GARNER
v.
James E. O'CONNOR et al.
HARDWARE MUTUAL CASUALTY
v.
Charles THOMASSEE et al.
Martin Wade PYNES
v.
James O'CONNOR et al.
Randolph K. LeMAY et al.
v.
Charles THOMASSEE et al.
STATE FARM MUTUAL INSURANCE CO.
v.
James O'CONNOR et al.
Nos. 9425 to 9429.
Court of Appeal of Louisiana, First Circuit.
June 29, 1973.
Rehearing Denied September 25, 1973.
Writ Refused November 16, 1973.
*808 Robert L. Kleinpeter, Baton Rouge, for appellant Thomassee.
David Ellison, Jr., Baton Rouge, for appellee-appellant Pynes.
Frank C. Fertitta, Baton Rouge, for appellee-appellant State Farm.
Paul Marks, Jr., Baton Rouge, for plaintiff-appellee-appellant King Lumber Industries, Inc., Richard Freeman & U. S. Fidelity & Guaranty Co.
Neil H. Mixon, Jr., Baton Rouge, for Garner.
Before LOTTINGER, ELLIS and CRAIN, JJ.
CRAIN, Judge.
The matter before us involves a multivehicle accident occurring in the east bound lanes of Interstate 10 on the new Mississippi River bridge on June 25, 1970. From this accident, six separate law suits resulted, all of which were consolidated for trial in the lower court.
The trial court's findings of fact are as follows:
"About 4:15 P.M. on the date aforementioned, a 1967 Ford automobile driven by James O'Connor stopped because of motor trouble in the inside lane of the three eastbound lanes on the east side of the River, two/tenths of a mile west of the turn-off exit to New Orleans. O'Connor got out of his car, and after looking under the hood of his car, attempted to flag down some approaching motorist in order to secure a pair of pliers. Martin Pynes, who was approaching in the same lane, heeded his warning for help and pulled his car around and stopped some fifteen or twenty feet in front of the O'Connor car. Pynes alighted from his vehicle and went back to confer with O'Connor. After a brief moment, he returned to his car and secured a pair of pliers which he gave to O'Connor. About the time as he *809 was retracing his steps to his car, another automobile, a 1969 Oldsmobile, driven by Charles Thomassee, proceeding in the same inside lane struck the right rear of the O'Connor Ford and then careened into a 1968 Plymouth Valiant in the middle lane being driven by Randolph Lemay. The evidence indicated that the impact between these cars occurred between the right side of the Thomassee automobile and the left side of the Lemay vehicle. As a result of this contact, the Lemay car was projected into the bridge railing adjoining the outside lane. Immediately thereafter a 1964 Pontiac automobile operated by Bruce Garner, struck the Lemay automobile which was just coming to rest in the outside lane. According to the occupants of both the Garner and Lemay vehicles, this was a modest impact. It appears that almost concurrent in time, another car, a 1969 Plymouth, driven by Jesse G. Giddens, collided with the rear of the O'Connor automobile which swung sideways into the middle lane after striking the inside railing caused by the force of the impact of the Thomassee vehicle. After a brief interval, a large Mack truck-trailer combination operated by Richard Freeman and owned by King Lumber Industries loaded with lumber plowed into the rear of the Garner Pontiac in the outside lane again forcing it into the Lemay automobile. After this initial impact, the Mack truck pushed the Garner automobile approximately 240 feet further down the roadway before finally coming to a rest."
The trial court went on to find that drivers LeMay, Garner, and Giddens were not guilty of any negligence. This finding has not been questioned on appeal. Also the trial court found that Pynes was not guilty of any negligence which was a proximate cause of the accident, that O'Connor and Thomassee were jointly negligent in causing the accident, and furthermore their negligence was a proximate cause of all the collisions. As a result of this finding, O'Connor, who was uninsured, and Thomassee, whose insurer was Signal Insurance Company, were cast in judgment in solido to LeMay, Garner, Giddens, Pynes, Ancelot, driver of the LeMay vehicle, and State Farm Mutual, the owner of the vehicle being driven by Giddens. The trial court further found that Richard Freeman, the truck driver, was guilty of negligence which was the proximate cause of the collision between the truck and the vehicle being driven by Bruce Garner. Therefore Freeman and his employer, King Lumber Industries, Inc., were held liable to Garner in solido with O'Connor, Thomassee and Signal Insurance Company for his personal injuries and the property damage sustained by his vehicle. From these holdings several appeals have resulted.
First, we direct our attention to the trial court's decision regarding the negligence of O'Connor. The trial court found that O'Connor stopped his vehicle in the far left lane of a busy interstate highway during a period when traffic on the highway was at least moderately heavy, and that he failed to take sufficient steps to warn approaching motorists of the hazard created by his vehicle in violation of the duties imposed upon him under LSA-R.S. 32:141, as interpreted by Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962). O'Connor has not chosen to appeal this decision.
Secondly, the trial court found that Charles Thomassee, who initially collided with the O'Connor vehicle, failed to see the vehicle until he was within twenty feet of it and at that point he was unable to stop his vehicle. In trying to switch lanes to avoid the ensuing collision he smashed into the right rear of the parked car. The trial court found that Thomassee did not use reasonable care in maintaining a proper lookout. Both in the trial court and on appeal, Thomassee has contended that he was confronted with a sudden emergency because the O'Connor vehicle was obscured from his view until it was too late for him to avoid the collision.
*810 Although a driver is not held to anticipate obstructions in the highway, he is required to maintain a vigilant lookout for any such obstructions especially in the case of drivers operating a vehicle on crowded multilane highways. In view of the fact that several drivers testified that they had seen the O'Connor vehicle while in the same lane of traffic and pulled around it, and further in view of the fact that Thomassee, himself, testified that he was looking in his rear view mirror in order to switch lanes immediately prior to the collision and his noticing the parked O'Connor vehicle, we find no manifest error in the trial court's decision. Thomassee's failure to maintain a proper lookout ahead under the circumstances resulted in his failure to site the parked vehicle until it was too late to avoid the collision.
Thomassee contends that Pynes was guilty of contributory negligence or either assumed the risk of the damages he suffered, and therefore his claims should be barred. The trial court had found that Pynes was not guilty of any contributory negligence proximately causing the accident. Thomassee's contentions are that Pynes was negligent in stopping his car on the highway and failing to take any steps to warn approaching motorists of the presence of either his vehicle or the O'Connor vehicle.
First, we agree with the trial court that Pynes was not negligent in stopping his car on the highway to aid a fellow driver in difficulty. The facts reveal that after he was flagged down by O'Connor, Pynes pulled his car ahead of the O'Connor vehicle before parking it. His vehicle posed no threat to approaching motorists who had to first avoid the O'Connor vehicle. His vehicle was not an obstruction in view of the fact that the O'Connor vehicle was already obstructing traffic.
Further, Pynes stopped his vehicle in order to give O'Connor a pair of pliers. He located his pliers in his car and gave them to O'Connor with dispatch. We agree with the trial court that Pynes actions in stopping his vehicle and his actions in lending what limited assistance he did to O'Connor does not reveal any negligence on his part which contributed to the accident which subsequently occurred. Also we find that Pynes' mere stopping to assist O'Connor by giving him a pair of pliers did not give rise to a duty on his part to take any affirmative action to warn approaching vehicles of the presence of the O'Connor vehicle, absent any expressed undertaking to do so.
Thomassee next contends that Pynes assumed the risk that he would be injured by stopping to assist O'Connor. Pynes stopped for the limited purpose of providing a pair of pliers to O'Connor. He did that as soon as possible and was walking to his car to leave the scene when the accident occurred. The evidence does not indicate that he negligently or intentionally exposed himself to the risk of injury by approaching traffic. Consequently, he did not assume the risk of being injured in the manner in which the accident occurred.
Next we turn to the trial court's finding of negligence on the part of Richard Freeman, the truck driver. The trial judge found him negligent for "failing to timely keep a proper lookout, in driving too fast under the circumstances, and in failing to maintain his vehicle under proper control." We find that there was sufficient evidence in the record to merit a finding that Freeman was indeed negligent.
Several passengers and drivers involved in the collision testified that at least 10 seconds elapsed between the time the Garner vehicle came to a rest after it collided with the LeMay vehicle, and the time the truck struck the Garner vehicle. Garner, himself, who was driving his vehicle well ahead of the truck was almost able to avoid the collision which occurred between his vehicle and the LeMay vehicle. Freeman had the opportunity to observe everything that Garner observed, and had several additional seconds at least ten and probably *811 more, to avoid the collision, fortunately, the considerable distance that Freeman was from the preceding accidents gave all the occupants except Garner, who could not open his door, sufficient time to exit their cars and run a considerable distance east of the impending collision. Even then the truck pushed the Garner car nearly 240 feet east of its impact point.
Certainly Freeman, who was driving a truck which was fully loaded, had an imposing duty to drive the truck at a rate of speed reasonable under the circumstances, and to maintain proper control. The considerable time and distances involved from where Freeman saw the accidents occurring and actually stopped his vehicle after collision indicate that he violated either or both of these duties.
Freeman was cast in judgment by the trial court only in the suit by Bruce Garner for his personal injuries and the property damage to his car. State Farm Mutual, who owned the car driven by Giddens, also named Freeman and King Lumber Industries, Inc. as party defendants in its suit for property damage to its car. They appeal the ruling of the trial court contending that Freeman struck the State Farm vehicle, and should be held liable in solido with O'Connor, Thomassee, and Signal Insurance Company for the damages to the vehicle.
The trial court was correct in not imposing liability on Freeman, King Lumber Industries, Inc. and their insurer for the damages to the State Farm automobile. The evidence would support a finding that the truck did not hit the State Farm vehicle at all. Even if it did, it is clear that it only scraped the side. The State Farm car was destroyed by fire which was caused by the gas tank of the O'Connor car catching fire and burning. Consequently the owner, driver and insurer of the truck should not be held for this damage.
In conjunction with this contention, there is also the contention of Pynes that the truck struck the Giddens' vehicle which in turn pushed the O'Connor vehicle into Pynes, so that King Lumber Industries, Inc. should also be cast in judgment in favor of Pynes. Suffice to say that this contention is entirely too speculative. The trial court would not have been manifestly erroneous in finding there was no contact between the truck and the Giddens' vehicle. Even if there was, there is absolutely no evidence to show that the truck caused any additional damage to Pynes who was struck down after the original collision between O'Connor and Thomassee.
No further issues regarding the liability of the various parties have been raised on this appeal; therefore, we direct ourselves to the quantum aspects in issue. Appellant, Richard Freeman, along with his employer, King Lumber Industries, Inc., have attacked the award made by the trial court to Bruce Garner for his pain and suffering. The trial court concluded that Garner should receive $10,000.00 for this item of damage. His findings were as follows:
"Bruce Garner was unable to free himself from his automobile after the first collision with Lemay's car and remained an occupant of the car when it was run over by the lumber truck. Garner was burned on the left hand and right side of his face before he was removed from his car following the accident. He also sustained a substantial cut on the back of his head caused by flying glass as well as numerous lacerations and bruises about the body. He suffered a severe cut on his tongue and two teeth were broken off which required capping. He was taken to the hospital where he was treated by Dr. Delmas Hutchison. Despite the severity of his injuries, Mr. Garner returned to work five days late(r), missing only two actual days of work during an intervening weekend.
Later Garner developed pain in his left shoulder and was referred to Dr. William Smith, an orthopedic surgeon.

*812 Dr. Smith first examined Garner on February 19, 1971, and found a minimal restriction of motion in abduction on rotation. He said there was a chronic biceps tenosynovitis with secondary periarticular fibrosis, which amounts to an inflammation of the tendons in the shoulder. He left the condition would be permanent, but would not interfere with Garner's usual occupational duties. While he acknowledged there was very little in the way of objective findings, he believed Garner was sincere in his complaints. He finally assessed Garner's disability at 15% of the shoulder. In view of the overall injuries suffered by Mr. Garner, the Court believes that the sum of $10,000.00 is adequate to compensate him for his injuries.
Garner's medical bills are itemized as follows: Dr. William Smith$85.00 (after deduction for report); Dr. Delmas Hutchison$40.00; Dr. Frank Bacot$200.00; Our Lady of the Lake Hospital$13.80; Baton Rouge General Hospital$110.00; Drugs$2.32; being a total medical expense of $451.12. Garner's other special damages are enumerated as follows: Dr. Hebert Jones$63.00 (eyeglasses); wrecker bill$15.00; and total loss of automobile$855.00; being a total of $933.00."
Under the above findings by the trial court we find the award to Garner to be within the limits of his discretion.
Appellant, Signal Insurance Company, the insurance carrier of the Thomassee vehicle, contends that the trial judge erred in rendering a judgment in solido against it for the full amount of each judgment in view of the fact that the policy of insurance in question contained a $10,000.00 limitation for bodily injuries suffered in any one accident. Since the awards for bodily injuries granted by the trial court exceed this $10,000.00, Signal Insurance Company contends the judgments should be so limited and apportional. This contention is correct. Poirrier v. Audubon Insurance Co., 120 So.2d 90, (La. App. 1st Cir., 1960). Recovery against Signal on the bodily injury claims should not exceed the limits of the policy. There is no problem in this respect with the property damage claims since the amount of coverage provided exceeds the total property damage awarded in all claims.
The judgments in the consolidated suits reveal that the amount of the awards against Signal Insurance Company as a solidary obligor for personal or bodily injuries to the various claimants totals $32,790.42. The apportionment of the liability of Signal Insurance Company to each claimant is based on the percentage that the award to each claimant bears to the whole of the amounts awarded to all the claimants for bodily injuries for which Signal Insurance Company is liable. The amount of Signal's liability to each claimant will then be the sum represented by the claimant's pro rata portion of the $10,000.00 available for distribution.
Bruce Garner was awarded $10,451.12 for bodily injuries and based on the computation outlined above, his award insofar as it affects Signal Insurance Company shall be limited to $3,187.30. Of the award to Randolph LeMay in the sum of $2,742.90, the liability of Signal should be limited to $836.48. Of the award to Clifton Ancelet in the sum of $1,124.76, the liability of Signal Insurance Company should be limited to the sum of $343.00. Of the sum of $18,471.64, awarded to Pynes Signal Insurance Company's liability should be limited to $5,633.22.

JUDGMENT IN NO. 9425
There will therefore be a judgment herein in favor of Bruce Garner against defendants, James E, O'Connor, Charles Thomassee, Signal Insurance Company, Richard Freeman, King Lumber Industries, Inc., and United States Fidelity and Guaranty *813 Company, jointly and in solido in the full and true sum of $11,384.12 together with legal interest thereon from date of judicial demand until paid and all costs including the expert witness fees and the deposition costs provided for in the judgment of the trial court, of which sum Signal Insurance Company's liability shall be limited to the sum of $3,187.30 for the damages totaling $10,451.12 resulting from the bodily injuries.
The judgment of the trial court is affirmed in all respects except as above amended.
Amended and Affirmed.

JUDGMENT IN NO. 9426
For the reasons stated above, the judgment of the trial court in favor of State Farm Mutual Automobile Insurance Company and against James O'Connor, Charles Thomassee and Signal Insurance Company in solido, in the sum of $2,176.64, with legal interest from judicial demand until paid, is affirmed, the defendants to pay all cost of this proceeding.
Affirmed.

JUDGMENT IN NO. 9427
For the reasons stated above, the judgment of the trial court in favor of Hardware Mutual Casualty Company against the appellant, Charles Thomassee, in the sum of $390.00 together with legal interest from judicial demand until paid is affirmed. Appellant to pay all costs of this proceeding.
Affirmed.

JUDGMENT IN NO. 9428
For the reasons stated above, there will be judgment in favor of plaintiff, Randolph K. LeMay and against the defendants, Charles Thomassee, Signal Insurance Company, and James O'Connor, jointly and in solido in the sum of $4,087.90 with legal interest thereon from the 25th day of June, 1971 until paid and for the full costs of these proceedings, of which sum Signal Insurance Company shall be liable for the amount of $836.48 for that portion of the award totaling $2,742.90 for bodily injury. There will also be judgment in favor of plaintiff-appellee, Clifton Ancelet, and against the defendants Charles Thomassee, Signal Insurance Company, and James O'Connor jointly and in solido in the sum of $1,124.76 together with legal interest from the 25th day of June, 1971 until paid, of which sum the liability of Signal Insurance Company shall be limited to the principal sum of $343.00 on the entire award which consisted totally of damages for bodily injury. In all other respects, the trial court's judgment is affirmed.
Amended and Affirmed.

JUDGMENT IN NO. 9429
For the reasons stated above, there will be judgment in favor of Martin Wade Pynes and against James E. O'Connor, Charles Thomassee, and Signal Insurance Company, in solido, in the amount of $18,661.45 with legal interest thereon from date of judicial demand until paid and for all costs of the suit, of which sum the liability of Signal Insurance Company shall be limited to the principal amount of $5,633.22 on the portion of the award totaling $18,471.64 for bodily injuries sustained. In all other respects the judgment of the trial court is affirmed.
Amended and Affirmed.